Sherman C. DEBRO, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 53S04–0308–CR–388.

Supreme Court of Indiana.

Jan. 27, 2005.

Michael J. Spencer, Deputy Public Defender, Bloomington, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

RUCKER, Justice.

We grant transfer in this case to address the question of whether a plea agreement based on a withheld judgment is a nullity per se and thus void *ab initio*. We conclude it is not.

### Fact and Procedural History

On March 10, 2001, after consuming some amount of alcohol, Sherman C. Debro became involved in a physical altercation with T.M., his live-in girlfriend, causing T.M. to sustain bodily injury. Apparently the parties' twelve-year-old daughter attempted to intervene and she too was injured. As a consequence, Debro was arrested and charged with battery as a Class D felony for the conduct resulting in injuries to his daughter and domestic battery as a Class A misdemeanor for the conduct resulting in injuries to T.M. Plea negotiations between Debro and the State ensued thereafter. As a member of the Indiana National Guard, Debro was concerned that if he proceeded to trial and was found guilty of either offense, then he "could not possess a firearm" which would interfere with his military service.[1] Appellant's App. at 25. In any event, on September 13, 2001, the State filed an amended charge of criminal recklessness as a Class B misdemeanor for Debro's conduct resulting in injuries to T.M.[2]

The agreement reached between Debro and the State required Debro to plead guilty to criminal recklessness and in exchange the State would dismiss the battery charges. As for sentencing, Debro and the State executed a document in open court on September 17, 2001, entitled "Deferred Sentencing Agreement." *Id.* at 14. Among other things the agreement provided in relevant part that Debro would: (1) commit no criminal offenses for a period of one year from the date of the agreement; (2) attend and successfully complete the Batterer's Treatment Program; and (3) not use any illicit, mood altering, or controlled substances and not use alcohol while enrolled in the Program. The trial court explained to Debro the consequences of pleading guilty and advised him that under the terms of the agreement, "the Court will not enter a judgment of conviction, and will not enter a sentence at this time, as long as you comply with all of the conditions in this Deferred Sentencing Agreement.... If you comply with the Agreement, that will be the end of it." *Id.* at 27–28. After making several inquires of

1. The Federal Firearms Act makes possession of a firearm illegal for anyone, "who has been convicted in any court of a misdemeanor crime of domestic violence." 18 U.S.C.S. § 922(g)(9).

2. Counsel for Debro commented that the State had "generously filed" the criminal recklessness charge. Appellant's App. at 21.

the trial court, Debro pleaded guilty to the amended charge and provided the trial court with a factual basis for the plea. The trial court accepted Debro's plea of guilty declaring, "I'm going to find that there is a basis of fact for the plea, and I'm going to withhold the imposition of judgment on the terms and conditions set out in the Agreed Deferred Sentencing Agreement." *Id.* at 35.

Six weeks later Debro was alleged to have again physically assaulted T.M., which required a visit to the hospital where she was diagnosed as suffering a "left orbital blowout fracture." *Id.* at 106. As a result, the State moved to impose judgment on the ground that Debro had violated the terms of the agreement by committing battery, a criminal offense. After conducting a hearing, which was continued several times because T.M. failed to appear, the trial court concluded that the "motion to impose the judgment has been proved by a preponderance of the evidence...." *Id.* at 137. The trial court then sentenced Debro to 180 days in jail, with 150 days suspended, and placed Debro on probation for one year. *Id.* at 143.

Debro appealed raising three issues for review, which we consolidate as two and restate as follows: (1) whether the trial court erred in enforcing the plea agreement, and (2) whether the trial court erred in the admission of hearsay evidence. Addressing the first issue only, a divided panel of the Court of Appeals reversed the judgment of the trial court on the ground that "Debro's plea agreement was void ab initio...." *Debro v. State,* 784 N.E.2d 1029, 1030 (Ind.Ct.App.2003). Having previously granted transfer, we now affirm the judgment of the trial court.

## Discussion

### I.

In *Lighty v. State,* 727 N.E.2d 1094 (Ind. Ct.App.2000), *trans. not sought,* the defen-
dant pleaded guilty to battery and entered a plea agreement which provided that judgment would be withheld for one year if the defendant was not "arrested based upon probable cause within that period" and if he successfully completed the Batterer's Program. *Id.* at 1095. The defendant enrolled in the program but was dismissed after he got into an altercation with a counselor. Consequently, the State filed a motion to reinstate judgment. *Id.* at 1095–96. The trial court determined that the defendant had violated the terms of the plea agreement and sentenced him to 180 days in jail to be followed by the balance of his original one-year sentence on probation. *Id.* at 1096. On review, the Court of Appeals reversed the judgment of the trial court holding:

> We are aware that some trial courts withhold judgment as a case management device for various purposes. While it may be useful, this informal practice finds no sanction in the law. Trial courts may not withhold judgment nor indefinitely postpone sentencing. As a matter of law, a "withheld judgment" or "judgment withheld" (also commonly known as a "JW") is a nullity.

*Id.* at 1096 (citations omitted). The Court of Appeals in this case also relied on *Lighty* for the proposition that "conditioning a plea agreement upon the trial court's ability to withhold judgment rendered that agreement void ab initio." *Debro,* 784 N.E.2d at 1033.

Underlying *Lighty* as well as the instant case is the general rule that a plea agreement entered in violation of a statute is void and unenforceable. *See Tolliver v. Mathas,* 512 N.E.2d 187, 189 (Ind.Ct.App. 1987), *trans. denied.* Indiana Code § 35–38–1–1(a) provides, "[A]fter a verdict, finding, or *plea of guilty,* if a new trial is not granted, the court *shall* enter a judgment of conviction." (Emphasis added). Debro

acknowledges that the statute does not explicitly set a time limit. He argues however that it nonetheless forbids trial courts from withholding judgment. Implicit in Debros argument is that his plea agreement was in violation of I.C. 35–38–1–1(a) and thus is void. The State counters that the statute mandates only the entry of judgment of conviction, but does not say when judgment must be entered. Thus, according to the State, there is no specific time limit within which a trial court is required to enter judgment.

We first observe that although the plea agreement in this case provided for a "deferred sentence" as opposed to a "withheld judgment" the end result is the same. The judgment of conviction on which the sentence was to be based was not entered immediately. In fact, the way in which such agreements are customarily used by trial courts throughout this State, no judgment of conviction is ever entered provided the defendant carries his or her end of the bargain. This is a tremendous benefit to the defendant because, provided the defendant faithfully observes the terms of the agreement, there is no conviction on the defendants record. *See, e.g., Carter v. State,* 750 N.E.2d 778, 780 (Ind.2001) ("A verdict of guilty can certainly be a significant legal event, but only if a court later enters judgment on it.") The same was intended here. As the trial court explained, "If you comply with the Agreement, that will be the end of it." Appellant's App. at 28. In any event the statute is indeed silent on the question of timing. However that is not to say the statute anticipates that the entry of judgment of conviction can be withheld indefinitely. Eight decades ago, addressing a statute similar to I.C. § 35–38–1–1, this Court held:

> [T]he rule is well settled that it is the duty of the court upon a plea of guilty or upon a finding or verdict of guilty, to impose sentence at that time unless there is reasonable excuse for delay ... and that an indefinite postponement of rendering judgment or pronouncing sentence will deprive the court of jurisdiction of the person of the defendant, from which it follows that a subsequent sentence is void.

*Warner v. State,* 194 Ind. 426, 143 N.E. 288, 290 (1924) (construing Section 2073, Burns 1914, which provided, "If the accused plead guilty, said plea shall be entered on the minutes, and he shall be sentenced, or he may be placed in the custody of the sheriff until sentenced."). In like fashion, addressing a predecessor to I.C. 35–38–1–1, this Court has held, "[C]ourts may defer temporarily final action upon a plea of guilty or upon a conviction to a subsequent day or term, when it appears that the interest of justice demands it or as said for cause shown...." *Smeltzer v. State,* 243 Ind. 437, 185 N.E.2d 428, 431 (1962) (quotation omitted) (construing Section 9–2201, Burns 1956, which provided, "After a finding or verdict of guilty, against the defendant, if a new trial be not granted, or the judgment be not arrested, the court must pronounce judgment.").

Generally at issue in these early cases was an alleged untimely sentencing as opposed to an alleged untimely entry of judgment. And in that regard there have been various statutory enactments over the years as well as the adoption of procedural rules that provide further guidance on the trial courts authority to delay sentence on a plea or verdict of guilty. *See, e.g.,* I.C. 35–38–1–2(b) (requiring trial court to set a sentencing date within thirty days after entering a conviction, unless for good cause shown an extension is granted); *accord* Ind.Crim. Rule 11 (requiring trial court to sentence a defendant within thirty days after entering a conviction, unless an

extension for good cause is shown); I.C. 35–35–3–3(a) (requiring the trial court to consider presentence report before accepting a defendants plea agreement); I.C. 35–38–1–8(a) (requiring the trial court to consider presentence report before sentencing a defendant convicted of a felony). Still, neither the current statute nor its predecessors speak to the question of timing. We are of the view that as slightly modified the rule long ago expressed is still applicable: the trial court may not withhold judgment but is required to enter judgment of conviction immediately unless a temporary postponement is dictated by good cause shown or the interest of justice so requires.[3] We thus disapprove of language in *Lighty* declaring that the practice of withheld judgments "finds no sanction in the law" and suggesting that a withheld judgment is a nullity per se. 727 N.E.2d at 1096.

In this case, as we have mentioned, the plea agreement contemplates not a "withheld" judgment but that no judgment would ever be entered. If Debro had fulfilled the terms of his agreement, then the charge to which he pleaded guilty would have been dismissed. The agreement was thus in clear violation of I.C. 35–38–1–1(a). That does not mean however that Debro is entitled to relief. A plea agreement is contractual in nature, binding the defendant, the State and the trial court. *Pannarale v. State*, 638 N.E.2d 1247, 1248 (Ind.1994). As we recently explained, "[D]efendants who plead guilty to achieve favorable outcomes give up a plethora of substantive claims and procedural rights, such as challenges to convictions that would otherwise constitute double jeopardy. Striking a favorable bargain including a consecutive sentence the court might otherwise not have the ability to impose falls within this category." *Lee v. State*, 816 N.E.2d 35, 40 (Ind.2004) (quotation omitted). Withheld judgments and deferred sentences fall into this category as well.[4] The agreement Debro reached with the State provided him with a significant benefit: the possibility of no criminal conviction for his admitted criminal conduct. Having failed to fulfill his part of the agreement, Debro may not now be heard to complain.

## II.

Debro also challenges certain hearsay statements the trial court allowed into evidence. Because the Court of Appeals reversed the judgment of the trial court on other grounds, it did not reach this issue. We do so now.

Debros complaint is based on the following facts. On November 9, 2001, the State sought to impose judgment against Debro

---

3. Under some circumstances a trial court is expressly authorized to withhold judgment. *See, e.g.,* I.C. § 35–48–4–12 (allowing a court to defer judgment following a plea of guilty to possession of marijuana or hashish as a Class A misdemeanor and place the person under the court's custody subject to conditions); I.C. § 12–23–14.5–15 (allowing a drug court to defer proceedings without entering a judgment of conviction following a guilty plea to an offense in which the use of alcohol or drugs was a contributing factor or material element of the offense and place the person under the court's custody subject to conditions).

4. We therefore expressly overrule *Miller v. State*, 783 N.E.2d 772 (Ind.Ct.App.2003), *trans. dismissed.* There the Court of Appeals held: "a plea agreement, like the agreement in *Lighty* and in this case, which requires the trial court, after a plea of guilty, to *withhold* judgment rather than *enter* judgment constitutes a contract made in violation of Indiana Code Section 35–38–1–1(a). As a result, such plea agreements are void and unenforceable." *Id.* at 779 (citation omitted).

by filing a document entitled "Motion To Set For Sentencing." Appellants App. at 15. The motion alleged that Debro violated the terms of his plea agreement by committing the offense of battery against T.M. A hearing on the motion was scheduled for January 31, 2002. On that date the State called as a witness Officer William Jeffers of the Bloomington Police Department. He testified without objection that on November 2, 2002, he responded to a dispatch to proceed to a local nightclub "in reference to a female that had been previously battered." *Id.* at 41. According to Officer Jeffers, he arrived on the scene and spoke with a person who identified herself as T.M. and "she was crying, she told the deputies that she had been beaten up." *Id.* When the State sought further inquiry into the details of the conversation between the officer and T.M., Debro objected on the grounds of hearsay. After an extended discussion the trial court sustained the objection, at which time the State moved for a continuance in order to secure T.M.'s presence. The hearing was continued until February 14, 2002. However, on that date and two occasions thereafter, the hearing was again continued when T.M. failed to appear although she was subpoenaed to do so.

A hearing was finally held on May 1 and May 2, 2002, in T.M.s absence when T.M. once again failed to appear despite being served with a subpoena. Officer Jeffers continued his testimony from the first hearing and testified that after arriving at the nightclub he noticed injuries to T.M.s face, and that "[h]er eye was black and it was almost completely shut. She had blood around her mouth and her nostrils." *Id.* at 74. Debro did not object to this testimony. However, over Debros objection, the State introduced into evidence hospital records for medical treatment T.M. received on November 2, 2002. Among other things, the records included a doctors medical diagnosis that T.M. suffered a "left orbital blowout fracture." *Id.* at 106. The State also introduced, over Debros objection, a sworn statement T.M. had given to a victims advocate in the Prosecutors office. The statement, written in T.M.s own hand, detailed the circumstances surrounding the event of November 2, 2002. *Id.* at 149. In his own defense, Debro introduced into evidence two documents also written in T.M.s own hand. Both identify "Debro" or "Sherman" as the person with whom T.M. had been in an altercation "on the night in question." *See id.* at 151, 153.

■ Debro argues that the admission of T.M.'s hearsay statements offered by the State violated his right to confront witnesses under both the state and federal constitutions. Under our state Constitution the accused must have the opportunity to cross-examine the witness during a "face to face" confrontation. Ind. Const. art. I, § 13; *Pierce v. State,* 677 N.E.2d 39, 49 (Ind.1997). The Sixth Amendment Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI.

■ Any right of confrontation to which Debro may have been entitled is largely dependant on the precise nature of these proceedings. Both the State and the trial court referred to the proceedings as a "sentencing hearing." We have held that the rule against hearsay does not apply to sentencing. *See Dumas v. State,* 803 N.E.2d 1113, 1120 (Ind.2004); *Letica v. State,* 569 N.E.2d 952, 957 (Ind.1991). And at least with respect to the federal constitution, the Seventh Circuit has determined that the Confrontation Clause does not apply to sentencing proceedings. "The Sixth Amendment accords an accused the

right to confront the witnesses against him in a 'criminal prosecution.' A sentencing hearing, however, is not a 'criminal prosecution' within the meaning of the Sixth Amendment because its sole purpose is to determine only the appropriate punishment for the offense, not the accused's guilt." *U.S. v. Francis,* 39 F.3d 803, 810 (7th Cir.1994) (citations omitted) (rejecting the defendant's claim that the use of hearsay testimony during his sentencing hearing violated the Confrontation Clause of the Sixth Amendment).[5]

■ We need not determine today whether our state constitution affords a defendant a right of confrontation in a sentencing hearing. And that is so because we do not view these proceedings as a sentencing hearing. The purpose of a sentencing "is to determine the type and extent of punishment." *Pickens v. State,* 767 N.E.2d 530, 534 (Ind.2002) (citing *Thomas v. State,* 562 N.E.2d 43, 47 (Ind.Ct.App. 1990)). Here, it is true the trial court ultimately sentenced Debro after considering the evidence presented. However, imposition of sentence was the result of, not the reason for, the proceedings. Rather, the proceedings were held to determine whether Debro had violated the terms and conditions of his plea agreement, specifically: "commit no criminal offenses for a period of one year from the date of the agreement." Although not precisely the same, the evidentiary hearings in this case were more analogous to a probation revocation proceeding than a sentencing hearing. For example, a provision requiring a

probationer to engage in no criminal conduct is typically included as a term of probation. *See* Ind.Code § 35–38–2–1(b). Also, as with a defendant committed to probation, Debro was granted a conditional liberty, contingent upon his compliance with the terms of his agreement. *See Rivera v. State,* 667 N.E.2d 764, 766 (Ind. Ct.App.1996) ("Probation is conditional liberty dependent upon the observance of the terms of probation."); *see also Carswell v. State,* 721 N.E.2d 1255, 1258 (Ind.Ct.App. 1999) ("Probation is a criminal sanction wherein a convicted defendant specifically agrees to accept conditions upon his behavior in lieu of imprisonment."). By complying with the conditions of probation and making a sincere effort at rehabilitation, the probationer avoids serving a sentence. Debro is similarly situated. Also, as in a probation revocation proceeding, here the trial court determined the State proved the allegation against Debro by a preponderance of the evidence. *See Cox v. State,* 706 N.E.2d 547, 551 (Ind.1999) ("A probation hearing is civil in nature and the State need only prove the alleged violations by a preponderance of the evidence.")

■ Although probationers are not entitled to the full array of constitutional rights afforded defendants at trial, "the Due Process Clause of the Fourteenth Amendment [does] impose [] procedural and substantive limits on the revocation of the conditional liberty created by probation." *Cox,* 706 N.E.2d at 549 (Ind.1999) (citing *Black v. Romano,* 471 U.S. 606, 610, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985)). In

---

**5.** This view is also consistent with those of several other federal circuit courts addressing whether the Confrontation Clause applies to sentencing. *See, e.g., United States v. Petty,* 982 F.2d 1365, 1370 (9th Cir.1993); *United States v. Tardiff,* 969 F.2d 1283, 1287 (1st Cir.1992); *United States v. Wise,* 976 F.2d 393, 397–98 (8th Cir.1992) (en banc); *United States v. Silverman,* 976 F.2d 1502, 1510 (6th Cir.1992) (en banc); *United States v. Johnson,* 935 F.2d 47, 50 (4th Cir.1991), *cert. denied,* 502 U.S. 991, 112 S.Ct. 609, 116 L.Ed.2d 632 (1991); *United States v. Kikumura,* 918 F.2d 1084, 1102–03 (3rd Cir.1990); *United States v. Beaulieu,* 893 F.2d 1177, 1180 (10th Cir. 1990), *cert. denied,* 497 U.S. 1038, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990).

the context of a probation revocation, this Court has said:

> There are certain due process rights, of course, which inure to a probationer at a revocation hearing. These include written notice of the claimed violations, disclosure of the evidence against him, an opportunity to be heard and present evidence, the right to confront and cross-examine adverse witnesses, and a neutral and detached hearing body. Indiana code § 35–38–2–3(d) also ensures the probationer the right to confrontation, cross-examination, and representation by counsel.

*Isaac v. State,* 605 N.E.2d 144, 148 (Ind. 1992) (citations omitted).[6] We are of the view that these same due process rights inure also to the benefit of a defendant in a proceeding to enforce a deferred sentence or withheld judgment.

 In this case the record is clear that Debro had no opportunity to cross-examine T.M. concerning her written statement to the prosecuting attorney. Nor did Debro have the opportunity to test by cross-examination the hearsay within hearsay contained in the hospital medical records. However, even assuming, and without deciding, that the trial court erred by allowing the documents into evidence, we hold the admission was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (declaring that a constitutional error may be harmless if it is clear beyond a reasonable doubt). The record shows that the testimony of Officer Jeffers, introduced into evidence without objection, established that T.M. was battered. The same is true

for the medical records. T.M.'s hearsay statement merely confirmed that fact and included details of the event. Combined with the exhibits Debro introduced on his own behalf, there was sufficient evidence of probative value before the trial court to demonstrate that Debro violated the terms of his plea agreement by committing battery, a criminal offense.

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.

---

6. *See also Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (declaring that in a parole revocation proceeding, a defendant is entitled to minimum requirements of due process, which include "the right to confront and cross-examine adverse witness (unless the hearing officer specifically finds good cause for not allowing confrontation) . . . .").