**Brandon WATSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 02A03–0412–CR–574.

Court of Appeals of Indiana.

Aug. 29, 2005.

P. Stephen Miller, Fort Wayne, for Appellant.

Steve Carter, Attorney General of Indiana, Maureen Ann Bartolo, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Brandon Watson appeals the revocation of his probation. Because Watson did not violate any conditions of his probation after he entered into a probation agreement approved by the trial court, his probation was improperly revoked. We therefore reverse the trial court.

### Facts and Procedural History

In March 2003, Watson pled guilty to two counts of Child Molesting as a Class C felony. In exchange, the State dismissed three counts of Child Molesting as a Class B felony. On April 16, 2003, the trial court sentenced Watson to concurrent terms of eight years in the Indiana Department of Correction but suspended the entire sentence and placed him on probation for four years. One of the many conditions of Watson's probation was to complete the Allen County Community Control Program, which consisted of a minimum of six months electronic monitoring supervision.

Thereafter, on July 21, 2003, Watson entered into a Stipulation of Probation Modification Agreement, which was signed by Watson, his probation officer, the chief probation officer, and the trial court. In the agreement, Watson admitted to violating the conditions of his probation because of "whereabouts unknown" and as a result agreed to serve two weekends in jail. Appellant's App. p. 59. The agreement contained the following acknowledgement:

I, Brandon Watson, agree to comply with [the above stated] special conditions of probation, which are in addition to the existing rules of probation of the Allen County Adult Probation Depart-

ment as ordered by the Court on April 16, 2003. In signing this stipulation, I understand that failure to comply with any of the [above] stated conditions or existing conditions could result in the revocation of my probation. *I further understand that revocation proceedings will not be pursued at this time in lieu of my compliance with this stipulation.*

. . . .

This agreement supplements previous special conditions of probation as imposed by the court but does not supercede the regular terms of probation.

*Id.* (emphasis added).

On December 30, 2003, Watson entered into a second Stipulation of Probation Modification Agreement, which was signed by Watson, his probation officer, the chief probation officer, and the trial court. In this second agreement, Watson again admitted to violating the conditions of his probation because of "whereabouts unknown" and as a result agreed to serve one weekend in jail and to complete twelve hours of disciplinary community service. *Id.* at 62. This agreement contained the same acknowledgment as the first one; namely, that the State would not seek revocation of Watson's probation if he complied with the stipulation.

On April 30, 2004, Watson entered into a third Stipulation of Probation Modification Agreement, which was signed by Watson, his probation officer, the chief probation officer, and the trial court. This time, Watson admitted to violating the conditions of his probation "by being found in possession of videotapes that contained nudity" and as a result agreed to spend four weekends in jail and to complete twenty-four hours of disciplinary community service. *Id.* at 66. This agreement contained the same acknowledgment as the two previous ones; namely, that the State would not seek revocation of Watson's probation if he complied with the stipulation.

Less than one month later, on May 28, 2004, the State filed a Verified Petition for Revocation of Probation. The State made a general allegation that Watson "violated the rules and conditions of [the April 16, 2003] probationary order ... [because he did] not successfully complete the Allen County Community Control Program." *Id.* at 69. However, the State attached a Case Summary to the Verified Petition for Revocation of Probation. The Case Summary showed only two alleged probation violations after Watson entered into his third and final probation modification agreement on April 30, 2004. Specifically, an entry to the Case Summary on May 17, 2004, alleged that "[Watson's] whereabouts [were] unknown from 9:00 AM to 11:56 AM on 4/25/04." *Id.* at 75. An entry to the Case Summary on May 18, 2004, alleged that "[Watson's] whereabouts [were] unknown from 9:00 AM to 11:56 AM on 5/2/04." *Id.*

The trial court then held a revocation hearing. At the hearing, the trial court found that Watson's whereabouts were accounted for on both April 25, 2004, and May 2, 2004. Despite the fact that there were no new allegations of probation violations since the April 30, 2004, probation modification agreement, the trial court found that Watson violated the Allen County Community Control Program. The trial court acknowledged Watson's attorney's argument that Watson had already been disciplined for these violations and that it would be unfair to punish him for a second time but nevertheless found:

[Watson] ha[s] been disciplined, but apparently, the discipline that was imposed by the Hearing Board ranging from disciplinary Community Service, a weekend in jail, two weekends in jail, more Community Service, another weekend, more Community Service, more Community Service, a threat of jail time, another threat of jail time, additional Community Service. Unfortunately, Mr. Watson,

those lesser impositions of punishment on you don't seem to have made an impact.

Tr. p. 6. Accordingly, the trial court concluded that "the State's proved by a preponderance of the evidence that [Watson] did not successfully complete the Allen County Community Control Program which was part of [his] probation." *Id.* The trial court revoked Watson's probation and imposed his previously suspended sentence of concurrent terms of eight years in the Department of Correction. Watson now appeals.

### Discussion and Decision

■ Watson contends that the trial court erred in revoking his probation. A probation hearing is civil in nature, and the State need only prove the alleged violations by a preponderance of the evidence. *Cox v. State,* 706 N.E.2d 547, 551 (Ind. 1999), *reh'g denied.* We will consider all the evidence most favorable to the judgment without reweighing the evidence or judging the credibility of witnesses. *Id.* If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation, we will affirm its decision to revoke probation. *Id.*

Watson's main argument on appeal is as follows: "Simply, there is no evidence that the Defendant violated any probation rules except for those for which he had been previously disciplined by the Court in a manner agreeable to all parties." Appellant's Br. p. 8. Therefore, Watson asserts that the trial court's revocation of his probation for previous violations is "contrary to the terms of the April 30, 2004[,] stipulation" and therefore prohibited. *Id.* at 11. We agree.

■ On April 30, 2004, Watson entered into a Stipulation of Probation Modification Agreement, which was signed not only by Watson but also by his probation officer, the chief probation officer, and, most importantly, the trial court. The probation modification agreement provided that the State would forego revocation proceedings if Watson complied with the conditions of his probation. Less than one month later, the State filed a petition to revoke Watson's probation based on two new occurrences of whereabouts unknown. However, the trial court found that Watson provided verification for his whereabouts on both of these occasions. The State provided no evidence that Watson violated any other conditions of his probation after the agreement was signed on April 30, 2004. Rather, the State presented evidence of violations that occurred before that date, for which Watson had already been punished.[1] Despite this, the trial court revoked Watson's probation.

■ However, the trial court was without power to revoke Watson's probation because it was a party to the April 30, 2004, Stipulation of Probation Modification Agreement, which we find to be akin to a plea agreement. That is, Watson and the State, through the probation department, agreed to a particular punishment, and in turn the State agreed to forego revocation proceedings. The trial court then approved the agreement. A plea agreement is contractual in nature, binding the defendant, the State, and the trial court. *Debro v. State,* 821 N.E.2d 367, 372 (Ind.2005). Once the trial court accepted the probation modification agreement, it was bound by its terms, one of which was that there would be no revocation of Watson's proba-

---

1. To the extent that Watson was not punished for any alleged probation violations that occurred before April 30, 2004, the State cannot now raise them as grounds supporting revocation of Watson's probation. Presumably, the State was aware of any additional violations before it decided to enter into the three probation modification agreements but did nothing about them at the respective times. The State cannot now turn back the clock.

tion if he complied with the conditions of his probation. Because the State presented no evidence that Watson violated any of the conditions following execution of the April 30, 2004, probation modification agreement, the trial court was without power to revoke Watson's probation.

We understand that probation agreements, such as the one in this case, are common. These agreements help alleviate court congestion and give an important tool to trial courts to monitor minor probation violations. However, with the advantages come certain disadvantages. Particularly, without holding a hearing the court may never be as fully apprised of the violations as it would have been with a hearing. Nonetheless, a probationer should be able to rely on the agreements that he reaches with the State that are subsequently approved by the court. Otherwise, we countenance a situation where the bar continues to move for the probationer. Because the State presented no evidence that Watson violated any of the conditions of his probation following the April 30, 2004, Stipulation of Probation Modification Agreement,[2] the trial court improperly revoked Watson's probation. We therefore reverse the trial court.

Judgment reversed.

SHARPNACK, J., and MAY, J., concur.

---

**2.** The State does argue that Watson violated a condition of his probation after the April 30, 2004, agreement, but the record does not bear this out. One of the conditions of Watson's probation was to pay home detention fees, which the State argues Watson failed to do in a timely manner. Nicki Caldwell, section chief for Allen County Community Corrections, testified at Watson's revocation hearing that "it was a continuing problem that he was continually behind" in not paying these fees. Tr. p. 46. However, Caldwell's testimony provides no time frame for Watson's failure to pay. Importantly, the Case Summary shows six entries where Watson failed to make a reasonable effort to pay these fees. However, the last entry was made on April 28, 2004, which was two days before Watson entered into the April 30, 2004, agreement. There is no evidence in the record that Watson failed to pay his fees after April 28, 2004, and we refuse to so imply on the record before us.