**Alexander J. ANGLEMYER,
Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 43A05–0510–CR–590.

Court of Appeals of Indiana.

April 20, 2006.

Transfer Granted June 22, 2006.

Michael W. Reed, Reed & Earhart Attorneys at Law, P.C, Warsaw, for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Alexander Anglemyer appeals his sixteen-year sentence imposed pursuant to a guilty plea. We affirm.

### Issues[1]

Anglemyer raises one issue, which we restate as:

I.   whether the trial court properly considered the aggravating and mitigating circumstances; and

II.  whether his sentence is appropriate.

### Facts

On May 14, 2005, Anglemyer ordered a pizza and instructed the delivery person to bring change for a $100 bill. When the delivery person arrived with the pizza, Anglemyer "beat and robbed him." App. p. 15.

On May 16, 2005, the State charged Anglemyer with Class B felony robbery and Class C felony battery. On August 16, 2005, Anglemyer pled guilty to both counts and the State agreed to dismiss pending unrelated charges of Class A misdemeanor resisting law enforcement, Class A misdemeanor possession of marijuana, Class B misdemeanor false informing and Class C misdemeanor minor possession of alcohol. The State also agreed to dismiss a pending probation violation. The plea agreement called for an "open" sentence with the sentences on each count to run consecutively, "capped" at sixteen years executed.

The trial court sentenced Anglemyer to ten years on the robbery conviction and six years on the battery conviction and ordered the sentences to be served consecutively. The trial court considered Anglemyer's criminal history and the seriousness of the offense as aggravating cir-

---

1.  Anglemyer argues that his sentence is inappropriate. In doing so, however, he argues that the trial court improperly considered the aggravators and mitigators. Consistent with the State's arguments on appeal, we address these as two distinct issues.

cumstances and his age as a mitigating circumstance. Anglemyer now appeals.

### Analysis [2]

#### I. Propriety of Anglemyer's Sentence

■ Anglemyer argues that the trial court improperly considered the seriousness of the offense as an aggravating circumstance and that the trial court should have considered the unlikelihood that the crime would reoccur, his remorse, his mental illness, and his guilty plea as mitigating circumstances. Because of these errors, Anglemyer contends that his sentence is improper and should be revised.

Before we address Anglemyer's claim, we observe that Anglemyer committed this offense on May 14, 2005, and was charged, convicted, and sentenced after the new sentencing system was enacted on April 25, 2005. In 1977, the General Assembly created a sentencing system calling for a fixed presumptive sentence that could be modified within a statutory range for each class of felony. If trial courts deviated from the fixed presumptive term, they were required to "(1) identify all significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance has been determined to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of circumstances." *Neale v. State*, 826 N.E.2d 635, 636 (Ind.2005). These changes were implemented in an effort to produce more uniform sentences. *See Rodriguez v. State*, 785 N.E.2d 1169, 1175 (Ind.Ct.App.2003), *trans. denied.*

However, in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) the Supreme Court reiterated that " 'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " *Id.* at 301, 124 S.Ct. at 2536 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000)). *Blakely* defined "statutory maximum" as "not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* at 303–04, 124 S.Ct. at 2537.

Whether *Blakely* implicated Indiana's presumptive sentencing system became the subject of much debate. *See Moon v. State*, 823 N.E.2d 710, 716 (Ind.Ct.App. 2005) ("*Blakely* implicates Indiana's sentencing scheme."), *trans. denied; Edwards v. State*, 822 N.E.2d 1106, 1112 (Ind.Ct. App.2005) (Barnes, J., dissenting) (concluding that pursuant to the clarifications in *U.S. v. Booker*, 543 U.S. 220, 245, 125 S.Ct. 738, 757, 160 L.Ed.2d 621 (2005), in which the Supreme Court essentially made the federal sentencing guidelines advisory by severing and excising the illegal provisions, *Blakely* did not impact Indiana's sentencing system). This question was definitively resolved in *Smylie v. State*, 823 N.E.2d 679 (Ind.2005), *cert. denied,—* U.S.—, — U.S. —, 126 S.Ct. 545, 163 L.Ed.2d 459.

In *Smylie*, our supreme court observed that Indiana's then-existing sentencing

---

2. Anglemyer suggests, "Further the Battery as charged in Count II constituted the force required for the offense of Robbery as charged in Count I. Since these offenses tend to merge in this fashion, the offenses should be treated as a single offense in sentencing." Appellant's Br. p. 11. To the extent that this argument could be viewed as a double jeopardy challenge, our supreme court recently reiterated that defendants who plead guilty to achieve favorable outcomes give up a plethora of substantive claims and procedural rights, such as challenges to convictions that would otherwise constitute double jeopardy. *Debro v. State*, 821 N.E.2d 367, 372 (Ind.2005). Thus, Anglemyer gave up any double jeopardy claim when he pled guilty. *See id.*

system was the functional equivalent of the unconstitutional sentencing system in *Blakely* because it established a mandatory starting point—the fixed presumptive term—based on the elements necessary to prove a particular offense and trial courts were required to engage in "judicial fact-finding" before imposing a sentence greater than the fixed presumptive term. *Id.* at 683. The *Smylie* court suggested:

> A constitutional scheme akin to ours could take one of two forms: (1) our present arrangement of fixed presumptive terms, modified to require jury findings on facts in aggravation, or (2) a system in which there is no stated "fixed term" (or at least none that has legally binding effect) in which judges would impose sentences without a jury.

*Id.* at 685. To remedy the constitutional infirmity, our supreme court held that the facts used to enhance a fixed presumptive term and envisioned by *Blakely* as necessitating a jury finding must indeed be found by a jury.[3] *Id.* at 686.

Soon thereafter, the General Assembly adopted the second option proposed in *Smylie* and amended our sentencing system by removing the fixed presumptive terms and replacing them with "advisory sentences." The General Assembly left the lower and upper limits for each class of offense intact and effectively created statutory sentencing ranges. *See* I.C. §§ 35–50–2–3 to 7. In addition to establishing advisory sentences, the General Assembly no longer required trial courts to consider certain mandatory circumstances when determining what sentence to impose. *See* I.C. § 35–38–1–7.1. Instead, Indiana Code Section 35–38–1–7.1 now only includes non-exhaustive lists of aggravating and mitigating circumstances that trial courts

"may" consider. Further, under the revised statute, trial courts may impose any sentence that is statutorily and constitutionally permissible "regardless of the presence or absence of aggravating circumstances or mitigating circumstances." I.C. § 35–38–1–7.1(d).

Interestingly, although such sweeping revisions were made, the General Assembly retained the section requiring "a statement of the court's reasons for selecting the sentence that it imposes" if a trial court finds aggravating or mitigating circumstances. I.C. § 35–38–1–3(3). Thus, we are faced with a conflict between the General Assembly's retention of the sentencing statement requirement and the revision of Indiana Code Section 35–38–1–7.1, which eliminates the requirement that sentencing decisions be based on the presence of aggravating and mitigating circumstances.

Although Indiana Code Section 35–38–1–3(3) clearly still requires trial courts to formulate sentencing statements, we conclude that the *Blakely* remedies enacted by the General Assembly render any error in such a sentencing statement moot. Our reasoning is twofold. First, because presumptive sentences have been replaced with advisory sentences, a trial court is no longer required to justify any deviation from the presumptive sentence. Second, because a trial court may impose any sentence within the proper statutory range regardless of the presence or absence of aggravating or mitigating circumstances, error in the trial court's identification or weighing of such is not an issue that now can be raised on appeal. Accordingly, as long as a sentence is within the proper statutory range, we cannot discern how or in what way a defendant could successfully challenge a sentence as an abuse of the

---

**3.** In addition to a jury finding, a prior conviction, an admission by a defendant, and a defendant's consent to judicial fact-finding are proper ways to enhance a sentence under *Blakely*. *Johnson v. State*, 830 N.E.2d 895, 897 (Ind.2005).

trial court's discretion. *See Cotto v. State,* 829 N.E.2d 520, 523 (Ind.2005) (acknowledging that sentencing determinations are within the trial courts' discretion.)

■ Even if an error relating to the trial court's finding of aggravating and mitigating circumstances occurs, under Indiana Code Section 35–38–1–7.1(d) we submit that any error is harmless. We come to this conclusion because on remand for the correction of an erroneous sentence, a trial court could correct an error by imposing precisely the same sentence while not finding any aggravating and mitigating circumstances, a resolution that we believe would be permissible under Indiana Code Section 35–38–1–7.1(d).

Undoubtedly, this situation will not facilitate the uniformity in sentencing that was the overarching theme of the 1977 sentencing reform and the "legislative decision to abandon indeterminate sentencing in favor of fixed and predicable penalties." *Smylie,* 823 N.E.2d at 686. As one commentator has observed of the new sentencing system, "A grant of such unfettered discretion offers little toward the 'underlying goal of criminal and sentencing statutes to provide uniform treatment among those who are convicted and sentenced for the same crime.'" Michael R. Limrick, *Senate Bill 96: How General Assembly Returned Problem of Uniform Sentencing to Indiana's Appellate Courts,* Res Jestae, Jan./Feb.2006, at 18 (quoting *Linger v. State,* 508 N.E.2d 56, 64 (Ind.Ct.App. 1987)). Further, "when trial courts are given such broad discretion, and when the presumptive-sentence yardstick has been eliminated, appellate review will be difficult to say the least."[4] *Id.* at 24.

Indeed, the extensive discretion afforded to trial courts under the new sentencing system will make even more imperative our review of sentences pursuant to Indiana Appellate Rule 7(B). In undertaking this review, oftentimes a detailed sentencing statement provides us with a great deal of insight regarding the nature of the offense and the character of the offender from the trial court judge who crafted a particular sentence. For this reason, we urge trial courts to continue issuing detailed sentencing statements pursuant to the direction of Indiana Code Section 35–38–1–3(3), as they facilitate our review of the appropriateness of sentences.

Here, Anglemyer pled guilty to Class B felony robbery and Class C felony battery. A person who commits a Class B felony shall be imprisoned for a fixed term of between six and twenty years, with the advisory sentence being ten years. I.C. § 35–50–2–5. A person who commits a Class C felony shall be imprisoned for a fixed term of between two and eight years, with the advisory sentence being four years. I.C. § 35–50–2–6. The trial court sentenced Anglemyer to ten years on the Class B felony and to six years on the Class C felony. Pursuant to the plea agreement, the trial court ordered the sentences to run consecutively for a total sentence of sixteen years.

Although his sentence for each offense falls within the proper statutory range, Anglemyer argues that the trial court erroneously considered certain aggravating and mitigating circumstances when it imposed those sentences. Because the trial court was permitted to impose the sixteen-year sentence regardless of the aggrava-

**4.** In her dissenting opinion in *Blakely,* Justice O'Connor predicted this result and observed, "The 'effect' of today's decision will be greater judicial discretion and less uniformity in sentencing." *Blakely,* 542 U.S. at 314, 124 S.Ct. at 2543 (O'Connor, J., dissenting). She also urged that the practical consequences of the decision might be "disastrous." *Id.* at 314, 124 S.Ct. at 2544. Justice O'Connor appears to have been correct in both observations.

tors and mitigators, we fail to see how the allegedly improper consideration of such circumstances results in a sentencing error. *See* I.C. § 35–38–1–7.1(d).

## II. Appropriateness

██ We initially observe that the recent revisions of Indiana's sentencing provisions do not affect our authority to review the appropriateness of sentences. Anglemyer argues that the trial court's allegedly improper consideration of the various aggravating and mitigating circumstances renders his sentence inappropriate. He asks us to exercise our authority to revise a sentence that is inappropriate in light of the nature of the offense and the character of the offender pursuant to Indiana Appellate Rule 7(B). The State argues that this claim is waived because, by agreeing to a plea that allowed for an executed sentence "capped" at sixteen years, Anglemyer implicitly agreed that any total sentence up to sixteen years appropriate.[5] Under these specific facts, we agree with the State.

Anglemyer's plea agreement called for an "open" sentence with the executed portion to be "capped" at sixteen years. Thus, the trial court had unlimited discretion to sentence Anglemyer within the fixed statutory ranges, subject to the sixteen year cap on executed time.

In *Payne v. State*, 838 N.E.2d 503, 507 (Ind.Ct.App.2005), *trans. denied* (2006), we concluded "that where a defendant pleads guilty but sentencing is left entirely to the trial court's discretion, a defendant may challenge the appropriateness of the resulting sentence under Indiana Appellate Rule 7(B)." However, *Payne* is not applicable here, where the trial court had the discretion to impose a more severe sentence but instead imposed a total sentence of sixteen years executed because the total liability to which Anglemyer was exposed was the same as the "capped" executed time to which he agreed.

Accordingly, the logic behind the waiver of appropriateness claims—that a defendant would not agree to a sentencing range that would be so unjust as to be characterized as inappropriate—applies here. *See Gornick v. State*, 832 N.E.2d 1031, 1035 (Ind.Ct.App.2005), *trans. denied.* In other words, because Anglemyer agreed to an executed sentence "capped" at sixteen years, he inherently agreed that such a sentence is appropriate. Thus, he also inherently agreed that a total sentence of sixteen years executed is appropriate. Anglemyer has waived his appropriateness claim. To analyze this claim any other way would allow defendants who plead guilty to "capped" sentences to receive the benefits of their plea agreements while forcing the State to defend the appropriateness of the sentences on appeal, depriving the State of one of its benefits under such agreements.

## Conclusion

Because Anglemyer was sentenced within the statutory ranges, his sentence is proper. Because Anglemyer's guilty plea called for an executed sentence "capped" at sixteen years and he was sentenced to a total of sixteen years executed, he has inherently agreed that such a sentence is appropriate. We affirm.

Affirmed.

SHARPNACK, J., and RILEY, J., concur.

---

5. We note that the resolution of this issue is pending before our supreme court. *See Kling* *v. State*, 837 N.E.2d 502, 506 n. 4 (Ind.2005).