

IN THE

# Court of Appeals of Indiana

Kevin T. Price,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*



FILED

Mar 25 2025, 9:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

March 25, 2025

Court of Appeals Case No.
24A-CR-2102

Appeal from the
Delaware Circuit Court

The Honorable
John M. Feick, Judge

Trial Court Cause Nos.
18C04-1606-F4-41
18C04-2402-F6-117

**Robb, Senior Judge.**

## Statement of the Case

[1] Kevin T. Price appeals after pleading guilty to Level 6 felony possession of cocaine, Class A misdemeanor resisting law enforcement, and being an habitual offender. The court also revoked his probation. He argues that the trial court abused its discretion by denying his motion to withdraw his guilty plea and by revoking his probation. We disagree and affirm.

## Facts and Procedural History

[2] Price was sentenced in Cause Number 18C04-1606-F4-41 (F4-41) to a term of six years in the Indiana Department of Correction (DOC), less credit time, for Level 5 felony Dealing in Cocaine, and a concurrent one-year sentence for Class A misdemeanor resisting law enforcement. The court modified the sentence in F4-41 on March 7, 2018, releasing Price from the DOC and suspending the remainder of his executed sentence to be served on supervised probation.

[3] On March 30, 2021, the probation department filed a petition to revoke Price's supervised probation, listing nine separate violations in its request. One of the violations was his "fail[ure] to appear [for] administrative sanctions hearings at

the probation department" on March 25, 2021. Appellant's App. Conf. Vol. 2, p. 118. Price did not make contact with the probation office and no hearing on the petition occurred at that time.

[4] On February 13, 2024, Price was in Delaware County in possession of cocaine. When he was confronted by a Delaware County Sheriff's Deputy who ordered him to stop, he fled. The State charged Price with Level 6 felony possession of cocaine, Class A misdemeanor resisting law enforcement, Class B misdemeanor possession of marijuana, and sought an habitual offender enhancement in Cause Number 18C04-2402-F6-117 (F6-117).

[5] On February 22, 2024, the State filed an amended petition to revoke Price's probation, including all of the prior violations from March 2021, and adding an allegation that Price had committed new criminal offenses in F6-117.

[6] On April 26, 2024, in F6-117, the parties entered into a plea agreement wherein Price would plead guilty to the Level 6 felony and the Class A misdemeanor offenses and to being an habitual offender. The plea agreement left sentencing to the trial court's discretion. That same day, the trial court took the plea agreement under advisement, ordered the preparation of a pre-sentence investigation report, and scheduled a sentencing hearing.

[7] On July 31, Price informed the court that he wanted to withdraw his guilty plea in F6-117 and formallly filed a motion to that effect on August 7. The trial court denied the motion. At the conclusion of Price's probation revocation hearing, the court found that he had violated his supervised probation in F4-41,

revoked it, and sentenced Price to serve three years executed in the DOC. The court sentenced Price to thirty months executed in the DOC for his Level 6 felony conviction and twelve months executed for his Class A misdemeanor conviction to be served concurrently with his conviction for the Level 6 felony. Price's sentence for the Level 6 felony was enhanced by an additional four years for the habitual offender finding. Both sentences were to be served consecutively to his sentence in F4-41. Price appeals from the trial court's orders in F4-41 and F6-117.

## Discussion and Decision

### I. Withdrawal of Guilty Plea

[8] Price argues the trial court abused its discretion by denying his request to withdraw his guilty plea. He contends that withdrawal was necessary to correct a manifest injustice and that his guilty plea was not voluntarily and intelligently made.

[9] After a guilty plea is entered, but before the sentence is imposed, the Indiana Code provides two potential avenues for withdrawal of a guilty plea. The trial court "shall" allow the withdrawal of the plea upon proof that it is "necessary to correct a manifest injustice." Ind. Code § 35-35-1-4(c) (1983). Absent such showing, the court "may allow" the defendant to withdraw their guilty plea "for any fair and just reason unless the State has been substantially prejudiced by reliance upon the defendant's plea." Ind. Code § 35-35-1-4(b). "[T]he moving

party has the burden of establishing his grounds for relief by a preponderance of the evidence." Ind. Code § 35-35-1-4(e).

[10] An appellant seeking to overturn a trial court's ruling on a motion to withdraw a guilty plea faces a "high hurdle" and a "presumption in favor of the ruling." *Coomer v. State*, 652 N.E.2d 60, 62 (Ind. 1995). We conclude that Price has failed to overcome this presumption under either avenue for withdrawal provided in Indiana Code section 35-35-1-4, and there is no question that Price received his *Boykin*[1] rights advisement.

[11] Price cites this Court's decision in *Jeffries v. State*, 966 N.E.2d 773 (Ind. Ct. App. 2012), *trans. denied*, to support his claim. In *Jeffries*, we said: "Instances of manifest injustice may include any of the following . . . a defendant is denied the effective assistance of counsel, the plea was not entered or ratified by the defendant, the plea was not knowingly and voluntarily made, the prosecutor failed to abide by the terms of the plea agreement, or the plea and judgment of conviction are void or voidable." *Id.* at 778.

[12] First, he appears to argue that he was denied the effective assistance of counsel. His only claim in that regard is that he did not have the opportunity to meaningfully consult with his attorney before entering his guilty plea. Appellant's Br. p. 13. Through successor counsel, he told the court that he was

---

[1] *Boykin v. Alabama*, 395 U.S. 238, 243 (1969) (right against self-incrimination, right to trial by jury, right to confront accusers); Tr. Vol. 2, p. 6 (Price advised of right to trial by jury, against self-incrimination, and to confront accusers).

"denied effective assistance of [his original] counsel, by counsel failing to meet with [him] while incarcerated between the time of [his] arrest in February and the time of [his] scheduled trial date." Tr. Vol. 2, p. 27.

[13] To the extent this argument can be characterized as an ineffective assistance of counsel claim, Price has waived it for failure to make cogent argument. *See* Ind. Appellate Rule 46(A)(8)(a) (brief must contain argument supported by cogent reasoning). Nevertheless, the record shows that Price and his original counsel signed the plea agreement, and Price, through questioning by his original counsel at the guilty plea hearing, established the factual basis to both counts and the habitual offender enhancement, and stated that it was his desire to plead guilty. Price explicitly stated: "I'm just like ready to get this over with." Tr. Vol. 2, p. 7. And the plea agreement itself expressly reflected: "The Defendant additionally acknowledges satisfaction with defense counsel's representation and competency exhibited in this matter and further acknowledges belief that this agreement is in the best interest of the Defendant." Appellant's App. Conf. Vol. 3, p. 137.

[14] As for his subsequent argument that he and original counsel did not meet, when asked if he had consulted with counsel in court, Price contradicted that claim at the hearing on his motion to withdraw by saying: "Only just to talk about things that were irrelevant. There wasn't anything of strategies in the nature of the offense." Tr. Vol. 2, p. 28. At that same hearing, he claimed he entered into the plea agreement: "To avoid going to trial without having any witnesses or being prepared." *Id.* Yet, on appeal, Price does not tell us which witnesses

he would have called, or what strategy should have been explored. And, beyond his statement that he and counsel did not meet while he was incarcerated, he does not show that he requested meetings but his requests were rebuffed by counsel or that he indicated to counsel that he preferred to go to trial instead of pleading guilty. Instead, Price said that with successor counsel's help, "maybe we could come up with a better resolution." *Id.* We conclude that Price has not met his burden of establishing ineffective assistance of counsel under either part of the two-part *Strickland*[2] test.

[15] To support the second part of his claim—that his guilty plea was not voluntarily and intelligently made—he says only that the trial court did not inform him of the minimum and maximum sentences he could receive for his offenses.

[16] Indiana Code section 35-35-1-2(a) (2018) provides in pertinent part that a "court shall not accept a plea of guilty . . . without first determining that the defendant: . . . (3) has been informed of the maximum possible sentence and minimum sentence for the crime charged and any possible increased sentence by reason of the fact of a prior conviction or convictions, and any possibility of the imposition of consecutive sentences[.]" Here, the record reflects that the court did not advise Price of the minimum and maximum sentences for his offenses. Price has not alleged that the advisement was constitutionally

---

[2] *Strickland v. Washington*, 466 U.S. 668, 687 (1984) ((1) counsel's performance fell below an objective level of reasonableness based on prevailing professional norms; and (2) the deficient performance resulted in prejudice.).

required, and only constitutionally required advisements are potentially reversible. Thus, Price has not met his burden and we could summarily decide this matter against him on those grounds alone. However, for the sake of argument, we will determine what effect this has on the voluntary and intelligent nature of Price's guilty plea.

[17] Under the former analysis in *German v. State*, 428 N.E.2d 234, 236 (Ind. 1981), the failure of the trial judge to personally inform the defendant of each of the advisements listed in Indiana Code section 35-4.1-1-3, the former version of Indiana Code section 35-35-1-2, at the time the defendant entered his guilty plea necessitated that the guilty plea be set aside. This was so even if the written plea agreement set out the advisements, because it was not an "adequate substitute for a personal advisement of so fundamental a matter as the concept of waiver." *German*, 428 N.E.2d at 236. Even though the defendants had signed the plea agreements acknowledging the waiver of the statutorily enumerated rights, "it was not ignorance which made their pleas unintelligent and involuntary. Rather, they were entitled to relief *because the trial judge had not followed the Code by personally reciting the right they were waiving*." *White v. State*, 497 N.E.2d 893, 896 (Ind. 1986) (analyzing *German*). And thus, on this record, if the *German* analysis were still good law, Price would be entitled to the relief he seeks.

[18] However, the legislature responded to the *German* decision's holding by adding Indiana Code section 35-35-1-2(c), which provides: "Any variance from the

requirements of this section that does not violate a constitutional right of the defendant is not a basis for setting aside a guilty plea."

[19] The Supreme Court responded to the legislative amendment in *Austin v. State*, 468 N.E.2d 1027, 1028 (Ind. 1984), holding that its decision in *German* was not grounded in statute, but rather, "strict compliance with the list of advisements was constitutionally required." *White*, 497 N.E.2d at 896 (analyzing *Austin*). Indiana Code subsections 35-35-1-2(a) and (b) "merely codified certain specific advisements, a knowledge of which is essential to an informed judgment, without which a waiver may not be said to be voluntary." *Austin*, 468 N.E.2d at 1028. The Court further held that the legislature's "harmless error" amendment was a nullity because all of the advisements listed in the Indiana Code were of "'constitutional dimension.'" *Id.* (quoting *Jones v. State*, 467 N.E.2d 757, 759 (Ind. Ct. App. 1984)).

[20] In *White*, our Supreme Court took a closer look at whether the "constitutional requirement" declared in *Austin* derived from the United States Constitution or the Indiana Constitution. 497 N.E.2d at 897. The Court observed that "[m]ost of the advisements listed in Indiana Code [section] 35-4.1-1-3 do not have a basis recognized in federal constitutional law." *Id.* Observing that the *Austin* Court cited *Boykin v. Alabama*, 395 U.S. 238 (1969), the Supreme Court in *White* noted that *Boykin* "identified only three federal constitutional rights which the record must disclose the defendant knew he was waiving before a reviewing court can affirm a finding that the plea was voluntary and intelligent: the right to a trial by jury, the right to confront one's accusers, and the right against self-

incrimination." *White*, 497 N.E2d at 897. The Court further noted that "[w]hile some members of the U.S. Supreme Court have suggested that the *Boykin* list is not exhaustive, they have not prevailed." *Id.* (citing *Neely v. Pennsylvania*, 411 U.S. 954 (1973); *Johnson v. Ohio*, 419 U.S. 924 (1974)).

[21] After concluding that the constitutional requirement did not derive from federal constitutional law, the Supreme Court in *White* turned to the Indiana constitution to search for the "due process" right cited in *Austin*. *Id*. The Court concluded that *Austin* did not refer to an Indiana constitutional provision and none could be found which made reference to a due process "right to be told." *Id.*[3] And the Court observed the incongruity in Indiana Code 35-35-1-2(b), which contrary to the holdings in *German* and *Austin*, provided that a defendant charged with a misdemeanor could waive those rights in subsection (b) by signing a written waiver, absent the oral advisements of the rights in subsection (a) by a judge. *Id.* Thus, subsection (b) "did not 'codify certain specific advisements.'" *Id.* at 898.

[22] With subsection (b)'s "codification of certain specific advisements" in doubt, the Court examined whether "each of the advisements in subsection 2(a) were of 'constitutional dimension.'" *Id.* The Court found that Indiana Code section

---

[3] The Court did note that article I, section 12 of the Indiana constitution does include a "due course of law" provision. *Id.* n.4. However, the Court discounted that the *Austin* Court was referring to that provision because a finding that our "'due course' clause requires advisements not mandated by federal 'due process', such a finding was contrary to a substantial line of cases treating the 'due process' clause of the federal constitution and the 'due course' clause of the Indiana Constitution as interchangeable." *Id.*

35-4.1-1-3 called for the trial court to "address the defendant directly and advise him" whereas Indiana Code section 35-35-1-2 "instructed the trial judge to 'determine' whether the defendant understood, as when a defendant who has signed a written waiver is asked whether he understands the rights he is waiving." *Id.* Thus, "[i]f only direct advice by the trial judge was adequate, then [section] 35-35-1-2(a) could not possibly codify the constitution." *Id.* And if other sections of the prior version of the statute which were eliminated by the legislature when drafting section 35-35-1-2(a) were still constitutionally required, "every guilty plea taken since September 1, 1982 by an Indiana trial judge following [section] 35-35-1-2 is voidable." *Id.* at 899-900.

[23] The Court in *White* concluded that a new method for assessing collateral attacks on convictions was required and held that a defendant who "claims that his plea was involuntary and unintelligent but can only establish that the trial judge failed to give an advisement in accordance with [section] 35-35-1-2 has not met his burden of proof." *Id.* at 905. "He needs to plead specific facts from which a finder of fact could conclude . . .that the trial judge's failure to make a full inquiry in accordance with [section] 35-35-1-2(a) rendered his decision involuntary or unintelligent." *Id.* "Of course, unless the record reveals that the defendant knew or was advised at the time of his plea that he was waiving his right to a jury trial, his right of confrontation and his right against self-incrimination, *Boykin* will require that his conviction be vacated." *Id.*

[24] The Court also "emphasize[d] that a plea hearing conducted in accordance with [Indiana Code section 35-35-1-2] is the best way to assure that a defendant's plea is made voluntarily and intelligently." *Id.*

[25] We observe at the outset that Price's premise that he was entitled to withdraw his guilty plea because the trial court did not orally advise him of the range of penalties no longer is the correct challenge under *White*. Instead, Price must challenge the trial court's failure to inquire into and make a determination whether Price understood the range of penalties when deciding to plead guilty. And Price has not pleaded "specific facts from which a finder of fact could conclude . . . that the judge's failure to make a full inquiry . . . rendered his decision involuntary or unintelligent." *White*, 497 N.E.2d at 905. And the record clearly demonstrates that he was advised of his *Boykin* rights, as codified in the statute. *See,* I.C. 35-35-1-2(a)(2)(A)("a public and speedy trial by jury"); (a)(2)(B)("confront and cross-examine the witnesses against the defendant"); and (a)(2)(D)("require the state to provide the defendant's guilt beyond a reasonable doubt at a trial at which the defendant may not be compelled to testify against himself or herself"). Here, we echo the Supreme Court's emphasis in *White*, that a plea hearing conducted in accordance with Indiana Code section 35-35-1-2 is the best way to establish a record that the defendant's plea is voluntarily and intelligently made. 497 N.E.2d at 905.

[26] However, here, there is no evidence that Price was misled by the judge, the prosecutor, or defense counsel about the choices he had. At best, Price established he believed with the assistance of subsequent counsel he could

"come up with a better resolution." Tr. Vol. 2, p. 28. But, he has not established that: (a) he did not know the sentencing range; or (b) if he had known the sentencing range, he would not have entered into the plea. At the time Price committed the new offenses, he was on probation for the same type of offenses, but the more serious charge was a Level 5 felony with a higher maximum sentencing range. Price pleaded guilty to a Level 6 felony offense.[4] Instead, he argues only that the court did not advise him of the range. As our legislature has indicated, "Any variance from the requirements of this section that does not violate a constitutional right of the defendant is not a basis for setting aside a plea of guilty." I.C. § 35-35-1-2(c). Price has not argued that a constitutional right was violated by the trial court's failure to inquire into his understanding of the range of penalties. We conclude that Price has not established reversible error.

## II. Probation Violation

[27] Price also challenges the trial court's decision to revoke his probation in F4-41 and order him to serve the remaining balance of his sentence. The court found that Price "has violated the terms of Supervised Probation as enumerated in the

---

[4] The trial court's sentencing order found Price's criminal history to be an aggravating circumstance. The court noted that as an adult, including the instant offenses, Price "has been charged with at least forty-eight (48) misdemeanors and twenty-three (23) felonies, resulting in fourteen (14) misdemeanors [sic] convictions and, including the Instant Offense, nine (9) felony convictions." Appellant's App. Vol. 4, p. 117. Suffice it to say, Price has extensive contacts with the criminal justice system such that he would be hard pressed to establish that his decision to plead guilty was not done voluntarily or intelligently.

Amended Petition for Revocation filed on 2-22-24." Appellant's App. Conf. Vol. 2, p. 232.

[28] "Probation revocation is a two-step process, wherein the trial court first makes a factual determination as to whether the probationer violated the terms of his probation." *Killebrew v. State*, 165 N.E.3d 578, 582 (Ind. Ct. App. 2021), *trans. denied*. If the trial court finds a violation, it may impose any of the following sanctions:

> (1) Continue the person on probation, with or without modifying or enlarging the conditions.
> (2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.
> (3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

Ind. Code § 35-38-2-3(h).

[29] As best we can tell, however, Price seems to contend that the trial court abused its discretion by finding the probation violation in the first place because he "did not receive notice of the petition to revoke his probation in a timely manner." Appellant's Br. p. 18. He notes that the original petition alleging a probation violation was filed on March 30, 2021. He claims he did not receive notice of the petition until February 15, 2024. In other words, instead of challenging the court's specific findings that Price violated the terms of his probation as alleged in the amended petition, or the sanction imposed, Price is making a due process argument in support of his abuse of discretion claim.

[30] "Although probationers are not entitled to the full array of constitutional rights afforded defendants at trial, 'the Due Process Clause of the Fourteenth Amendment does impose procedural and substantive limits on the revocation of the conditional liberty created by probation.'" *Debro v. State*, 821 N.E.2d 367, 374 (Ind. 2005) (quoting *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999)). The Indiana Supreme Court said:

> There are certain due process rights which inure to a probationer at a revocation hearing. These include written notice of the claimed violations, disclosure of the evidence against him, an opportunity to be heard and present evidence, the right to confront and cross-examine adverse witnesses, and a neutral and detached hearing body. Indiana Code § 35-38-2-3(d) also ensures the probationer the right to confrontation, cross-examination, and representation by counsel.

*Isaac v. State*, 605 N.E.2d 144, 148 (Ind. 1992) (citations omitted), *cert. denied*, 508 U.S. 922 (1993).

[31] Here, however, the record reflects that the original probation violation was filed on March 30, 2021 and included nine alleged violations. Among the violations was that Price had failed to report to an administrative hearing. His probation officer testified that Price failed to appear and failed to call. Price's probation was set to conclude on March 6, 2021. However, Price made no attempt to contact his probation officer from March 2021 until his arrest for the charges filed in F6-117 on February 13, 2024. On February 22, the probation department filed an amended petition for probation revocation listing all of the

allegations contained in the March 2021 petition and the additional allegation that Price had committed new offenses in F6-117.

[32]  Price does not direct our attention to any evidence that he did not receive notice of the amended petition to revoke his probation in F4-41. Price testified at his probation revocation hearing about reasons why he did not make contact with his probation officer between March 2021 and February 13, 2024. But he has failed to establish how his due process rights were denied because of his failure to receive notice of the original probation revocation petition. The hearing was held on the amended petition of which he received notice and testified. Further, his counsel made arguments about the allegations and the sanctions which should be imposed. Price has not established that the trial court abused its discretion.

## Conclusion

[33]  Although better practice dictates advising the defendant of the maximum and minimum sentencing exposure he or she faces, we conclude that there are no grounds for reversal here. And Price has not established that the court abused its discretion by revoking his probation in F4-41 and imposing a sanction where Price received notice of the amended petition for revocation and was heard.

[34]  Affirmed.


Altice, C.J., and Pyle, J., concur.

ATTORNEY FOR APPELLANT

Ana M. Quirk
Quirk & Hunter, P.C.
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana