Robert GIBSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A04–0603–CR–165.

Court of Appeals of Indiana.

Nov. 8, 2006.

John T. Wilson, Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Mara McCabe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Robert Gibson appeals the sentence imposed following his plea of guilty to Class C felony operating a vehicle while intoxicated resulting in death, Class C felony operating a vehicle with a blood alcohol content exceeding .08 resulting in death, and Class C felony reckless homicide. We reverse and remand.

### Issue

The sole restated issue before us is whether Gibson was properly sentenced.

### Facts

On August 6, 2005, Gibson drove his vehicle after having ingested alcohol and Xanax. At approximately 7:30 p.m., Gibson attempted to pass a line of several cars in a no-passing zone. He struck a motorcycle driven by Sherri Trick in the opposite lane head-on, causing the motorcycle to burst into flames and instantly killing Trick. A subsequent blood test revealed Gibson had a blood alcohol level of .076, but according to a toxicologist it would have been .08 or greater at the time of the accident.

On September 14, 2005, the State filed an information charging Gibson with Class C felony reckless homicide and Class C felony operating a vehicle with a blood alcohol content exceeding .08 resulting in death. On December 9, 2005, the State filed an amended information that added the charge of Class C felony operating a vehicle while intoxicated resulting in death. On December 12, at the initial hearing for the amended information, Gibson pled guilty to all three charges against him. Sentencing was left to the trial court, with the stipulation that the sentences for each conviction had to be served concurrently.

At the conclusion of the sentencing hearing held on January 9, 2006, the only possible mitigating circumstance noted by the trial court was Gibson's expression of remorse but the court gave it little weight, stating, "I think it's only expected, a person in his situation would offer remorse and be very remorseful." Tr. p. 94. As aggravating circumstances, the court noted Gibson's 1996 misdemeanor conviction for possession of marijuana, as well as his accumulation of twelve speeding tickets. The court also noted that Gibson had taken two defensive driving courses, having completed the most recent one within two weeks of the accident.

The trial court also issued a written sentencing statement that bears little resemblance to its oral statement at the conclusion of the sentencing hearing. That statement makes no mention of any mitigators and found the following aggravators: "Defendant's prior criminal history; defendant was on probation at the time this crime was committed; prior attempts at rehabilitation have failed; defen-

dant is in need of correctional rehabilitative treatment that can best be provided by his commitment to a penal facility." App. p. 52. The court imposed the maximum sentence of eight years for each conviction, to be served concurrently. Gibson now appeals.

## Analysis

We first note that Gibson claims the trial court relied on aggravators to enhance his sentence in a manner that violated his Sixth Amendment right to a jury trial, as outlined in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Neither Gibson, nor the State for that matter, notes that this case falls entirely under our legislature's response to *Blakely*, namely the new "advisory" sentencing statutes that became effective on April 25, 2005. Gibson committed his crime after that date and so the new statutes clearly apply in this case. In the absence of any argument as to why *Blakely* should apply to a trial court's finding of aggravators to impose a sentence exceeding a non-binding "advisory" term, as opposed to a "presumptive" term, we decline to address the issue any further.

Assuming that *Blakely* does not apply to the new "advisory" sentencing statutes, this hardly means that the *Blakely* "shock-waves" are not in play here. Its after-effects are still felt because the new statutes raise a new set of questions as to the respective roles of trial and appellate courts in sentencing, the necessity of a trial court continuing to issue sentencing statements, and appellate review of a trial court's finding of aggravators and mitigators under a scheme where the trial court does not have to find aggravators or mitigators to impose any sentence within the statutory range for an offense, including the maximum sentence. The continued validity or relevance of well-established case law developed under the old "presumptive" sentencing scheme is unclear.

We attempted to address these questions in *Anglemyer v. State*, 845 N.E.2d 1087 (Ind.Ct.App.2006), *trans. granted*. We observed that under the current version of Indiana Code Section 35–38–1–7.1(d), trial courts may impose any sentence that is statutorily and constitutionally permissible "regardless of the presence or absence of aggravating circumstances or mitigating circumstances." *Id.* at 1090. We also noted, however, that Indiana Code Section 35–38–1–3(3) still requires "a statement of the court's reasons for selecting the sentence that it imposes" if a trial court finds aggravating or mitigating circumstances. *Id.* In attempting to reconcile this language, we concluded that any possible error in a trial court's sentencing statement under the new "advisory" sentencing scheme necessarily would be harmless. *Id.* at 1091. Therefore, we declined to review Anglemyer's challenges to the correctness of the trial court's sentencing statement. *Id.* Nevertheless, we stated, "oftentimes a detailed sentencing statement provides us with a great deal of insight regarding the nature of the offense and the character of the offender from the trial court judge who crafted a particular sentence" and encouraged trial courts to continue issuing detailed sentencing statements to aid in our review of sentences under Indiana Appellate Rule 7(B). *Id.*

Our attempt in *Anglemyer* to analyze how appellate review of sentences imposed under the "advisory" scheme should proceed was met with a swift grant of transfer by our supreme court. Until that court issues an opinion in *Anglemyer*, we will assume that it is necessary to assess the accuracy of a trial court's sentencing statement if, as here, the trial court issued one, according to the standards developed under the "presumptive"

sentencing system, while keeping in mind that the trial court had "discretion" to impose any sentence within the statutory range for Class C felonies "regardless of the presence or absence of aggravating circumstances or mitigating circumstances." *See* Ind.Code § 35–38–1–7.1(d); *see also Fuller v. State*, 852 N.E.2d 22, 26 (Ind.Ct.App.2006) ("a sentencing court is under no obligation to find, consider, or weigh either aggravating or mitigating circumstances."). We will assess the trial court's recognition or nonrecognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed here was inappropriate. In other words, even if it would not have been possible for the trial court to have abused its discretion in sentencing Gibson because of any purported error in the sentencing statement, it is clear we still may exercise our authority under Article 7, Section 6 of the Indiana Constitution and Indiana Appellate Rule 7(B) to revise a sentence we conclude is inappropriate in light of the nature of the offense and the character of the offender. *See Childress v. State*, 848 N.E.2d 1073, 1079–80 (Ind.2006); *see also Buchanan v. State*, 767 N.E.2d 967, 972 (Ind.2002) (holding that Indiana Constitution permits independent appellate review and revision of a sentence even if trial court "acted within its lawful discretion in determining a sentence").

In reviewing a sentencing statement, "we are not limited to the written sentencing statement but may consider the trial court's comments in the transcript of the sentencing proceedings." *Corbett v. State*, 764 N.E.2d 622, 631 (Ind.2002). Turning first to the written sentencing statement in this case, we note the following. First, to the extent it states that Gibson was on probation for another offense when he committed the current crime(s), the State concedes there is no

evidence that would support such a finding and this clearly was not a proper aggravating circumstance in this case. Second, the trial court stated that Gibson was "in need of correctional rehabilitative treatment that can best be provided by his commitment to a penal facility" without explanation as to why this was the case. App. p. 52. Use of this factor to justify an extended period of incarceration is proper only if the trial court provides a specific or individualized reason as to why this is so, especially if the defendant has not previously been incarcerated for a long period of time. *See Hope v. State*, 834 N.E.2d 713, 719 (Ind.Ct.App.2005). Gibson previously has served only six days in jail; the lack of explanation for this aggravator means it is inapplicable here. Similarly, the trial court stated that prior attempts to rehabilitate Gibson had failed, but Gibson had never been subjected to rehabilitative efforts in a penal facility; there is no explanation as to what prior rehabilitative efforts the trial court was referring.

Finally, the trial court noted Gibson's prior criminal history as an aggravating circumstance. Gibson has one conviction from 1996 for Class A misdemeanor possession of marijuana. In assigning weight to a defendant's criminal history, courts must consider the chronological remoteness of any prior convictions as well as the gravity, nature, and number of prior crimes. *Haas v. State*, 849 N.E.2d 550, 556 (Ind.2006). The only relation Gibson's 1996 conviction has to the present offenses is that it also concerned substance abuse. However, it was a simple possession crime and occurred in 1995, ten years before this incident. Gibson's criminal history is entitled to at most very minimal aggravating weight, given the gravity, nature, and number of crimes and its chronological remoteness.

We now address the comments the trial court made at the sentencing hearing. As for aggravators, the trial court focused in part on the fact that Gibson has numerous prior citations for speeding and, as a result, had been required to attend defensive driving classes on two separate occasions, the last one being less than two weeks before this accident. We agree that although this does not technically constitute a "criminal history," it is highly relevant to the incident at issue here. Gibson's history of speeding tickets and two obviously failed attempts to address his driving behavior did not dissuade him from driving recklessly again, with the result this time being death. This constitutes a valid and significant aggravator in this particular case.

The trial court also acknowledged that Gibson had expressed remorse for his actions, but discounted it as a mitigating circumstance. Remorse, or lack thereof, by a defendant often is something that is better gauged by a trial judge who views and hears a defendant's apology and demeanor first hand and determines the defendant's credibility. *See Pickens v. State*, 767 N.E.2d 530, 535 (Ind.2002). In addition to noting that someone who has caused the death of another should be expected to express remorse, it also is apparent that the trial court was skeptical of Gibson's explanations of how much he had to drink and how he "accidentally" came to ingest the Xanax, as well as his explanations for why he had accumulated so many traffic tickets. In light of these firsthand observations, we cannot say it was improper not to give Gibson's remorse more mitigating weight.

However, the trial court wholly failed to mention Gibson's guilty plea as a mitigating circumstance. Generally, a de-

fendant's guilty plea is entitled to some mitigating weight, although the amount of such weight may vary from case to case. *See Hope*, 834 N.E.2d at 718. "A guilty plea demonstrates a defendant's acceptance of responsibility for the crime and extends a benefit to the State and to the victim or the victim's family by avoiding a full-blown trial." *Francis v. State*, 817 N.E.2d 235, 237–38 (Ind.2004). The State posits in part that Gibson's plea is not entitled to much weight because it had "strong evidence" against him. Appellee's Br. p. 6. We previously have rejected such an argument for discounting the weight of a guilty plea. *See Hope*, 834 N.E.2d at 718–19. The State also faults Gibson for not pleading guilty until the State was able to acquire evidence from a toxicologist that Gibson's blood alcohol level was in fact greater than .08 at the time of the accident. We, however, do not blame Gibson for not pleading guilty, at least as to the .08 charge, until the State established it could prove that charge, given that Gibson tested .076 after the accident.

By contrast, we believe it is very telling that Gibson pled to all three charges against him without the benefit of a plea bargain, although it appears that he only could have been convicted of one of the charges had he gone to trial. *See Dawson v. State*, 612 N.E.2d 580, 585 (Ind.Ct.App. 1993) (holding that although federal constitution's double jeopardy provision did not necessarily prohibit punishment for both operating while intoxicated resulting in death and reckless homicide based on one accident resulting in one death, Indiana law did so). The fact that Gibson pled guilty without negotiating any type of "deal" for himself with respect to sentencing or dismissal of charges certainly increases the mitigating weight of the plea.[1]

---

1. The State told the trial court that, as a     matter of law, it believed the sentences for

We conclude that Gibson's guilty plea is entitled to substantial mitigating weight.

We also observe that the trial court made the following comments when sentencing Gibson:

> I think everybody in the courtroom would probably agree that the laws in Indiana are too lenient in regards to these cases. I probably even think that if Mr. Gibson were not in the situation that he's in now, he would also feel that way. There are two countries in the world that—people get tired of me saying this, but in which the first offense for driving while intoxicated is the death penalty.

Tr. pp. 98–99. It is axiomatic that a trial judge's desire to send a personal philosophical or political message is not a proper reason to aggravate a sentence. *Nybo v. State*, 799 N.E.2d 1146, 1152 (Ind.Ct. App.2003); *see also Scheckel v. State*, 655 N.E.2d 506, 510 (Ind.1995). The trial court's comments here were ill-advised. The law is what it is, and courts cannot attempt to compensate for what they believe might be too lenient of a sentencing range for an offense by imposing maximum sentences that otherwise are not supported by the character of the offender and the nature of the offense. It is up to the legislature to decide whether operating a vehicle while intoxicated resulting in death should result in a punishment of more than two to eight years. Two to eight years currently is the sentencing range for Class C felonies, including reckless homicide and operating while intoxicated resulting in death. *See* I.C. § 35–50–2–6(a).[2] Gibson was entitled to be sentenced in the same fashion as a person who committed any other Class C felony.

Having analyzed the trial court's sentencing statements and having found several errors in them, we now address under Indiana Appellate Rule 7(B) whether Gibson's sentence is inappropriate in light of the nature of the offense and his character. As for the nature of the offense, Gibson ingested both twice the therapeutic dosage of Xanax and alcohol, which in the opinion of the State's toxicologist would have caused him to be very impaired. Gibson then attempted to pass a line of several cars in a marked no-passing zone and struck Trick head-on. This is an ugly and tragic set of circumstances. However, the legislature clearly contemplated behavior similar to Gibson's when they drafted the statutes under which he was convicted and classified those crimes as Class C felonies.

With respect to Gibson's character, as noted earlier, his guilty plea in this case is entitled to significant weight. He also presented evidence of generally having been a productive member of society prior to the incident. His actual criminal history is minimal. However, his repeated disregard for traffic laws should not be ignored. Gibson had been fortunate for many years that his driving behavior had never resulted in injury to anyone.

Gibson received the maximum possible sentence that was permitted by state law. *See Dawson*, 612 N.E.2d at 585. We conclude that the maximum sentence is inappropriate here. We assign significant ag-

---

these convictions had to run concurrently. In other words, the requirement that the sentences be served concurrently was not part of a plea bargain.

**2.** Operating while intoxicated resulting in death is a Class B felony if the defendant has a previous operating while intoxicated conviction within the previous five years or if his or her license is suspended because of an operating while intoxicated offense. *See* I.C. § 9–30–5–5(a).

gravating weight to Gibson's failure to drive more carefully despite his numerous speeding tickets and participation in two defensive driving classes, but this is partially counterbalanced by the significant mitigating weight of Gibson's guilty plea. A total sentence of six years is more appropriate in light of the nature of the offenses and Gibson's character.

### Conclusion

We reverse and remand with instructions that Gibson's sentences for all three convictions be reduced to six years each, to be served concurrently.

Reversed and remanded.

SULLIVAN, J., concurs.

ROBB, J., concurs in result.