**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MICHAEL C. BORSCHEL**
Fishers, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DAIMON CULPEPPER, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 49A02-1209-CR-724 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
Cause No. 49G04-1009-FA-73516

**March 22, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

Daimon[1] Culpepper appeals his sentence following his conviction for robbery, as a Class A felony, pursuant to a guilty plea. Culpepper presents a single issue for our review, namely, whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On September 17, 2010, Tiffany Johnson visited Nicholas Toliver at Toliver's residence and discovered that he had "a large quantity of cocaine." Transcript at 18. After Johnson left Toliver's residence, she told Aaron Smith and Culpepper about the cocaine and asked them if they would help her rob Toliver. Smith and Culpepper agreed, Smith asked Jamonte Walker to help them with the robbery, and Walker asked William Brookins to drive the group to Toliver's home.

Once they arrived, Johnson knocked on Toliver's front door while the others remained out of sight. Toliver let Johnson inside. A short time later, Smith and Walker knocked on Toliver's door. When Toliver opened the door, he saw either Smith or Walker holding a pistol. The gunman then demanded money and drugs from Toliver. A struggle ensued, and the gunman struck Toliver several times in the head. And when Toliver attempted to flee, the gunman shot him in the back, killing him. Culpepper remained in the car during the entire incident.

---

[1] Culpepper's first name is spelled "Damion" in the briefs on appeal. But he signed and printed his name as "Daimon" on the Pre-Sentence Investigation Report, and his name appears as "Daimon" in various documents filed with the trial court.

The State charged Culpepper with conspiracy to commit robbery, as a Class A felony. In April 2011, Culpepper entered into a plea agreement whereby he pleaded guilty to conspiracy to commit robbery, as a Class B felony, in exchange for giving truthful testimony during his co-defendants' trials. But the State filed a notice of intent to withdraw guilty plea after Culpepper gave exculpatory testimony at a co-defendant's trial. Thereafter, in July 2012, Culpepper agreed to plead guilty to conspiracy to commit robbery, as a Class A felony, without the benefit of a plea agreement. The trial court accepted the plea, entered judgment of conviction accordingly, and sentenced Culpepper to forty years, with ten years suspended. This appeal ensued.

## DISCUSSION AND DECISION

Culpepper contends that his sentence is inappropriate in light of the nature of the offense and his character.[2] Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution "authorize[ ] independent appellate review and revision of a sentence imposed by the trial court." Roush v. State, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). Id. Revision of a sentence under Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offenses and his character. See App. R. 7(B); Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was

---

[2] To the extent Culpepper attempts to argue that the trial court also abused its discretion when it sentenced him, he makes no cogent argument in support of that contention. As such, we review his sentence only under Indiana Appellate Rule 7(B).

3

inappropriate. Gibson v. State, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." Roush, 875 N.E.2d at 812 (alteration original).

The Indiana Supreme Court has stated that "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. See id. at 1224. The principal role of appellate review is to attempt to "leaven the outliers." Id. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." Id. at 1224.

Culpepper first contends that his sentence is inappropriate in light of the nature of the offense because "his conduct merely mirrors the statutory elements" of the crime. Brief of Appellant at 7. He maintains that his "de minimis" participation in the crime warrants only the advisory sentence of thirty years. Id. But, considering the nature and circumstances of the crime, this was a home invasion armed robbery for cocaine which resulted in death. Thus, the nature of the offense cannot be minimized.

Culpepper points to several proffered mitigators in support of his contention that his sentence is inappropriate in light of his character. In particular, Culpepper asserts that he has good character as reflected by: his youth; his expression of remorse; his acceptance of responsibility for his actions; his lack of a serious or relevant criminal

4

history; and his substance abuse. But Culpepper's criminal history dates back to 2004, when he was only fourteen years old, and includes four juvenile adjudications, including one for carrying a handgun without a license, and one conviction for attempted robbery, as a Class C felony, at age seventeen after he was waived into adult court. Moreover, Culpepper has a history of noncompliance with probation and alternative commitment. He has failed formal probation, home-based counseling, electronic monitoring (twice), a community service program, and a substance abuse program. In addition, Culpepper violated community corrections following his Class C felony conviction. Culpepper's extensive history of substance abuse also reflects poorly on his character. He admits to having smoked "ten to fifteen [marijuana] blunts daily" from the age of fourteen until September 2010. Pre-Sentence Investigation Report at 10. And he "began experimenting with prescription medications at the age of sixteen," including Xanax, Klonopin, and Percocet. Id. at 11. Culpepper admitted at sentencing that he had not complied with court-ordered substance abuse treatment in the past. Finally, Culpepper violated the terms of his plea agreement when he testified falsely at a co-defendant's trial, which does not mitigate in favor of a revised sentence. We cannot say that Culpepper's forty-year sentence is inappropriate in light of his character.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.