**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHELLE BUMGARNER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTHONY EDWARDS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1210-CR-803 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
Cause No. 49G04-1012-FB-95769

**July 3, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Anthony Edwards appeals his sentence following his convictions for burglary, as a Class B felony; theft, as a Class D felony; seven counts of criminal trespass, as Class A misdemeanors; public intoxication, a Class B misdemeanor; voyeurism, as a Class B misdemeanor; and failure to stop after an accident causing damage to property other than another vehicle, a Class B misdemeanor; pursuant to a guilty plea. Edwards raises a single issue for our review, namely, whether his sentence is inappropriate in light of the nature of the offenses and his character.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On January 5, 2011, the State charged Edwards with thirteen felonies and seventeen misdemeanors stemming from "a series of sexual assaults, burglaries, criminal trespass, and voyeurism complaints" involving Edwards. Appellant's App. at 27. A few days before his trial, on December 16, 2011, Edwards pleaded guilty in open court to burglary, as a Class B felony; theft, as a Class D felony; seven counts of criminal trespass, as Class A misdemeanors; public intoxication, a Class B misdemeanor; voyeurism, as a Class B misdemeanor; and failure to stop after an accident causing damage to property other than another vehicle, a Class B misdemeanor. The trial court accepted those pleas, and on February 8, 2012, the State dismissed the remaining charges against Edwards.

At sentencing, the trial court stated as follows:

I will say that this is one case where there's some difficulty in trying to decide what's the right thing to do but I'm guided in that by the testimony

2

and the presentence investigation that I reviewed. And I feel I know quite a bit about the defendant even though there are still charges that are outstanding. I am considering only the charges that are before me here today where the defendant has admitted his responsibility. I find some aggravators and some mitigators. There are aggravators that I believe exist. Defendant has a long history of criminal behavior and that includes many similar offenses. I went back through his criminal history and find the following eleven misdemeanor convictions—I see he was on Probation four—five times—five times; made it through once. Revoked four times, many of those because he committed a new offense. He was also tried on home detention a couple times; once as a juvenile, once as an adult and failed both of those placements and was revoked. And in looking at this history, I'm just going to recite it so the record's clear: 1996 as a juvenile, true finding for auto theft which would have been a felony if he was an adult; April of '96, true finding for trespass and fleeing and also a second case of conversion; True finding March of '96 so that's—that's three offenses in—four offenses in 1996 and that one was another trespass; March of 1995 there was a diversion on battery so that was sort of his introduction to the whole juvenile justice system. As an adult, he was waived from juvenile, due to his background, on a possession of cocaine case where he was found guilty and put on probation and failed on probation and was revoked. November of 1998, a trespass for which he was sentenced to six days, time served. May of 1999 auto theft where he did go to the DOC for two hundred and [sic] seventy days. At least he was sentenced to that, I don't know if that was a time-served plea. It occurs to me that it might have been by the time he got finished with his time in the Marion County Jail, that it was time served basically. Then June of 1999, carrying a handgun without a license where he got a six[-]year sentence: Three years executed, three years suspended on probation and was revoked because he failed to comply with his home detention as part of that sentence. February 2004, operating a vehicle while intoxicated where he was convicted of that A misdemeanor and his probation was revoked. May of '04, resisting law enforcement; was given a year, time served. February of '05, driving while suspended, a class A misdemeanor, a year suspended. July of '05, trespass, a class A misdemeanor, one year all suspended. October of '06, possession of marijuana, a class A misdemeanor; while he was—while he was out on that he was arrested for a new case, revoked. July of '09, trespass, a year suspended. October of '09, driving while suspended, a class A misdemeanor, one year suspended. October of '09 again, resisting law enforcement, a year suspended with his probation revoked because of the new case. March 2010, trespass, a year suspended. October of 2010, public intoxication, a B misdemeanor where he got community service work and did sixteen hours of community service work. So these—this history of trespass is really concerning to me. It—he just

has a long history of criminal behavior that has been handled in the misdemeanor division where they have hundreds and thousands of cases and he's slipped through each time with basically no sentence. The State never once went back—because he was arrested many times while he was under suspended sentence and never once were any of those suspended sentences required to be served. And so I think Mr. Edwards has developed, over the years, an expectation that the criminal justice system simply is not going to address his behavior, especially if it's a misdemeanor behavior of some sort. He has a long history of substance abuse by his admission, with the way he's used alcohol and I don't—I'm not convinced that he only used marijuana one time even though that's what he said. I think that it's pretty clear from looking at the report, the presentence report that that's not being honest with me. I also don't believe the defendant was honest with me today when he said that he would simply go into the liquor store, get a drink, and then just find himself walking around with the drink in his hand. I suppose that's meant to convince me that the defendant somehow just wandered in repeatedly to Canal Square and Vermont Place apartment complexes[,] which are, at least, as was pointed out to me, five miles or so from where he lives. He does accept responsibility for the offenses by his plea of guilty, expresses an apology to the victims of his offense which he's done repeatedly through his history of criminal behavior. The nature of the offense—I think these offenses that he's pled guilty to span from December 1, 2009[,] all the way through to December 28, 2010. There are—there are different dates, December, March, August of 2010 including the sort of, I guess, cataclysmic end to it of the burglary and the property damage accident and the behavior that was associated with that. And what's amazing to me is that even after all of that drama with crashing the car and the victim's—victim's property being found in the back of the car, he's back at Vermont Place on December 28. So I mean, if—it's clear to me that the defendant does not feel any obligation to listen to what law enforcement tells him about staying away from someplace. What that—what's happened is it's created a significant risk to the community involving the invasion of many people's sense of security in their homes and in their persons. For the reports that are given—you know, the testimony here today indicates just a very heightened level of concern on the part of these residents. Also an enormous loss, even a financial loss to the apartment complexes because of this one man's behavior. And I'm not in any way saying that there's not some other person that is creeping around apartment complexes peeping in windows because there are a number of individuals in our community [who] unfortunately can't conform their behavior to what's expected. You know, I'm sensitive to what you're saying about the—it being a mitigator, that he does have children for which it would be a hardship if he has a lengthy term of incarceration. However, I mean, I look at his history and no judge that he's gone before in the past

4

has made any difference in his behavior. Constantly you have disregarded the harm created by your behavior. Nothing that I say is going to change you or what you do. You're the only person who can do that. I hope that the certificates and all these things that you presented to me today, I hope that those are evidence that you've taken this longest period in your entire lifetime of incarceration to change your view of the world. Each of us has a responsibility to the world. We have a responsibility to do the right thing and to be the best that we can and to give something back. We're put here for reasons and as—if we selfishly ignore our duty to the community, we wind up in this sort of situation that you're in right now and I really think that's what you've done, just is ignore what you were supposed to be doing and instead do something else. You've created now an expectation in your family and in the community that you are now a person of faith and that carries with it a responsibility of how you act toward the community and towards your fellow man and I hope that you intend to live up to that responsibility. My concern here, however, is that its time has come. This is a day of reckoning for you. It's a reckoning for your past behavior. If you never are punished for what you've done, you will not ever in your own min[d] have paid for what you did. And it's very hard to start over if you feel that you still owe. I'm creating a sentence and it's a tough sentence and I just tell you that in advance that I know that. But I'm not convinced that anything that I can say or do will change your behavior.

Transcript at 135-41. The trial court then imposed a twenty-five-year aggregate sentence, all executed. This appeal ensued.

## DISCUSSION AND DECISION

Edwards contends that his sentence is inappropriate in light of the nature of the offenses and his character. In particular, Edwards states that he is "not challenging his eighteen-year sentence for burglary [as a Class B felony]." Brief of Appellant at 8. Instead, he challenges only "the imposition of consecutive sentences on the misdemeanors, resulting in a total sentence of twenty-five years[.]" Id. Edwards asks this court to "revise his sentence downward by ordering the consecutive misdemeanor sentences, totaling seven years to be executed at the Marion County Jail after he finishes

5

his time at the Department of Correction, to be served concurrent[] with his eighteen-year sentence on the Class B felony." Id.

Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution "authorize [ ] independent appellate review and revision of a sentence imposed by the trial court." Roush v. State, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). Id. Revision of a sentence under Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offenses and his character. See App. R. 7(B); Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. Gibson v. State, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." Roush, 875 N.E.2d at 812 (alteration original).

The Indiana Supreme Court has also stated that "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. See id. at 1224. The principal role of appellate review is to attempt to "leaven the outliers." Id. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant,

6

the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." Id. at 1224.

Edwards first contends that his sentence is inappropriate in light of the nature of the offenses. He maintains that the crimes "were not of a particularly violent nature" and he is not the worst offender. Brief of Appellant at 8. But as the trial court pointed out in its extensive findings at sentencing, Edwards' conduct over the course of more than a year

> created a significant risk to the community involving the invasion of many people's sense of security in their homes and in their persons. For the reports that are given—you know, the testimony here today indicates just a very heightened level of concern on the part of these residents. Also an enormous loss, even a financial loss to the apartment complexes because of this one man's behavior[.]

Transcript at 140. Indeed, Allison Hughes, the property manager of Canal Square Apartments at the time of these offenses, testified that there was a "sense of terror" among the residents as a result of Edwards' conduct. Id. at 103. Hughes also testified that she expended a lot of time dealing with law enforcement and the media surrounding these events. We cannot say that Edwards' sentence is inappropriate in light of the nature of the offenses.

Next, Edwards contends that his sentence is inappropriate in light of his character. In particular, Edwards points out that he "expressed responsibility and remorse for his crimes" and took "positive and proactive steps toward rehabilitation while he was incarcerated awaiting trial." Brief of Appellant at 8. Edwards also maintains that his good character is reflected by his guilty plea, his parenthood, his participation in Alcoholics Anonymous meetings, and various life skills programs offered in jail. But, as

7

the trial court's sentencing statement illustrates, Edwards' criminal history is extensive and includes three felony convictions, eleven misdemeanor convictions, four probation violations, and two failed home detentions. Edwards has consistently demonstrated that he has no regard for the rule of law, and he has not shown that lenient punishments have had any impact on changing his behavior. Edwards also has an extensive history of untreated alcohol abuse. We cannot say that Edwards' sentence is inappropriate in light of his character.

Affirmed.

BAILEY, J., and BARNES, J., concur.