**Pursuant to Ind.Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ADAM C. SQUILLER**
Squiller & Hardy
Auburn, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA P. TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JULIE MARIE KING, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 17A03-1305-CR-186 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DEKALB SUPERIOR COURT
The Honorable Monte L. Brown, Judge
Cause No. 17D02-1201-MR-1

**December 11, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Julie Marie King appeals the sentence imposed for aiding in attempted murder, a Class A felony, pursuant to a plea agreement. King presents a single issue for review, namely, whether her sentence is inappropriate in light of the nature of the offense and her character.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In October 2011, King allowed a married couple, Ralph and Cassie Hardiek, to move in with her after the Hardieks became homeless. The three friends regularly used methamphetamine. Cassie subsequently began serving time for a drug offense, and King and Cassie's husband began a casual sexual relationship.

On December 8, Ralph Hardiek[1] failed to appear for a sentencing hearing following a guilty plea for dealing in methamphetamine. Between December 8 and December 11, Hardiek and King drove to Coldwater, Michigan, where they had several guns illegally modified by Thomas McCauley. McCauley filed the trigger guards off of several handguns, including a .44-special revolver, and sawed the barrel off of a shotgun. And on December 13, King drove to a gun store in New Haven, Indiana, where she bought ammunition for the .44-special handgun and gave it to Hardiek.[2]

King and Hardiek planned to relocate to another state, but they were low on funds. On December 13, they returned to McCauley's home. In the early morning of December

---

[1] All future references to Hardiek pertain to Ralph Hardiek.

[2] Hardiek could not legally purchase ammunition because he was a convicted felon.

2

15, King and Hardiek began knocking on the doors of houses in DeKalb County, Indiana. The inhabitants of two houses did not respond. The inhabitant of a third house, Nancy Krontz, answered her door. King said that her car was stuck and asked for help in getting it towed. Krontz declined and informed law enforcement about her encounter with King and Hardiek. Waterloo Deputy Marshall Stephen Brady began looking for King's vehicle to assist King and Hardiek. When he found them, he asked King for identification. While King and Officer Brady were talking, Hardiek fired the .44-special revolver, hitting Officer Brady in the side of the face. King and Hardiek then fled and hid under the deck of a house a couple of blocks away.

Law enforcement was dispatched to the scene and began searching for King and Hardiek. A resident a couple of blocks from the scene of the shooting reported that there were people hiding underneath the deck behind his house. Officers surrounded the deck and ordered King and Hardiek to come out, but the couple did not respond. Hardiek then pointed a gun at the officers, and the officers responded by opening fire. Hardiek and King were both hit. Hardiek died of his wounds, and King sustained multiple shots to her arm and head, lost part of a finger, and has nerve damage.

The State charged King with murder, a felony; conspiracy to commit murder, a Class A felony; and aiding in attempted murder, a Class A felony. Pursuant to a plea agreement, King pleaded guilty to aiding in attempted murder, and the State dropped the remaining charges. The plea agreement capped the sentence at forty-five years, with no more than thirty-eight years to be executed. It also provided that Hardiek's death could not be used as an aggravator. At the sentencing hearing, the trial court found the

3

following aggravators: King's criminal history; that King's "past arrests, convictions, probations, incarcerations, counseling programs, and the like ha[d] not yet caused her to become rehabilitated and her subsequent illegal conduct ha[d] not been deterred"; her significant history of drug abuse; that she bought the ammunition used in the .44-special, which was used to shoot Officer Brady; that the victim was a police officer; that the harm, injury, loss or damage suffered by the victim of an offense was: "(A) significant; and (B) greater than the elements necessary to prove the commission of the offense"; that King was on probation at the time of the offense; and that, when King was removed from under the deck, she had a knife in her boot and a handgun in the sleeve of her jacket, "which provides more evidence of a propensity for violence." Appellant's App. at 11-12. The trial court found a single mitigator, namely, that King had pleaded guilty. Finding that the aggravators outweighed the mitigator, the court sentenced King to forty-five years with thirty-eight years executed. King now appeals her sentence.

## DISCUSSION AND DECISION

King contends that her forty-five-year sentence, with thirty-eight years executed, is inappropriate in light of the nature of the offense and her character. Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution "authorize[] independent appellate review and revision of a sentence imposed by the trial court." Roush v. State, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). Id. Revision of a sentence under Appellate Rule 7(B) requires the appellant to demonstrate that her sentence is inappropriate in light of the

4

nature of her offense and her character. See Ind. Appellate Rule 7(B); Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. Gibson v. State, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." Roush, 875 N.E.2d at 812 (alteration original).

Moreover, "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. See id. at 1224. The principal role of appellate review is to attempt to "leaven the outliers." Id. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." Id. at 1224.

We first consider the nature of King's offense. The sentencing range for a Class A felony is twenty to fifty years, with an advisory sentence of thirty years. Ind. Code § 35-50-2-4. King knew that Hardiek wished to avoid jail at any cost and had threatened to set himself on fire, yet she purchased ammunition for him and assisted him in a crime spree that spanned two states. A camera found by officers in King's purse contained video made in the two weeks before the shooting showing Hardiek saying he would consider anything to avoid going to jail, including "suicide by cop" or setting himself on fire.

Transcript at 65. During that two-week period, King and Hardiek had weapons modified illegally in Michigan and then used them in attempted robberies.

When Officer Brady found King and Hardiek in Indiana, believing them to have car trouble, Hardiek shot the officer in the face. The impact of the bullet broke Officer Brady's jaw. Officer Brady underwent surgery to install a replacement jaw, and he was unable to work for eleven months thereafter. As a result of his injury, Officer Brady now has frequent and severe headaches, twenty-five-percent vision loss in his left eye, hearing loss in his left ear, and difficulty moving his jaw.

After the shooting, Hardiek and King left Officer Brady for dead and hid under a deck, heavily armed. They did not respond when officers found them and ordered them to come out. Hardiek then pointed a gun at officers, resulting in the officers opening fire on King and Hardiek. When King was pulled from under the deck, she had a knife in her boot and a handgun up her sleeve. We cannot say that the sentence is inappropriate in light of the nature of the offense.[3]

Nor has King shown that the sentence is inappropriate in light of her character. King, who was thirty-three years old at the time of the offense, has a criminal history in Michigan spanning back to her teenage years, namely, two misdemeanor counts of possession of alcohol not in a vehicle in 1996 and 1999 respectively; a felony count of controlled substance use Schedule 5 or LSD in 1999; and a misdemeanor count of

---

[3] In the plea agreement, the parties agreed that the State could "not use the death of Ralph Hardiek as an aggravator although the court may consider the rest of the events under the porch for sentencing." Appellant's App. at 177.

transporting open intoxicants.[4] Three felony charges of robbery, unlawful imprisonment, and felony firearms, arising from the attempted robbery on December 14, remain pending in Michigan. In Indiana she has a Class A misdemeanor conviction for conversion in 2011. Her history of criminal activity and extensive drug abuse, despite sober periods, show a continued disdain for the law, and the instant offense is much more serious than her prior convictions. Further, her parental rights to her daughter were terminated in 2009, and she was on probation at the time of the instant offense. While her agreement to plead guilty and her expression of remorse are commendable, we cannot say that her thirty-eight-year executed sentence is inappropriate in light of her character.

Affirmed.

BAKER, J., and CRONE, J., concur.

---

[4] King's earliest adult conviction in Michigan occurred when she was seventeen years old. King does not allege that that conviction was improperly included in her adult criminal history, and the chief probation officer stated at the sentencing hearing that seventeen is the age of adulthood under Michigan law.

7