## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 05 2016, 7:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Scott H. Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Darnell L. Parks,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | August 5, 2016<br><br>Court of Appeals Case No.<br>20A03-1602-CR-290<br><br>Appeal from the Elkhart Circuit Court<br><br>The Honorable Terry C. Shewmaker, Judge<br><br>Trial Court Cause No.<br>20C01-1410-FD-865 |

**Najam, Judge.**

## Statement of the Case

Darnell Parks appeals his sentence following his conviction for child solicitation, as a Class D felony. Parks presents a single issue for our review, namely, whether his sentence is inappropriate in light of the nature of the offense and his character. We affirm.

## Facts and Procedural History

On June 30, 2013, Parks' then-twelve-year-old daughter C.P. spent the night at Parks' apartment with two of her siblings. During the early morning hours of July 1, Parks was looking at C.P.'s Facebook account[1] and saw a photo of a boy's penis that someone had sent to C.P. by private message. Parks woke C.P. and said, "Why is this boy sending you a picture of his thing[?]" Tr. at 42. C.P. responded, "I don't know." *Id.* Parks left the room, but he returned and slapped C.P. C.P. started crying.

Parks and C.P. went into a bedroom. Parks then said to C.P., "when boys send you these kind of things, it makes it seem like you want to have sex with somebody." *Id.* And Parks said that she "need[ed] to stop . . . letting people send pictures and stuff like that" to her. *Id.* at 47. C.P. agreed. Parks told C.P. that "boys [would think that she is] like 16 or 17, and they would try to get with

---

[1] C.P. had been using Parks' phone to look at her Facebook page the evening before and had left the page open.

[her]." *Id.* C.P. told Parks that she told boys her real age, but that they "don't listen." *Id.*

[4] Parks then told C.P. to "lay up on the bed" so he could "stick [his] private part up inside of [her]." *Id.* at 47-48. Parks had his "hands in his pants" as he said that, and he was "moving his hand." *Id.* at 48. Parks told C.P. that "he had sex with [C.P.'s mother] a whole bunch of times" and "it didn't hurt her[.]" *Id.* at 49. C.P. told Parks that she did not "want to hear that." *Id.* Parks then asked C.P. whether he could "lick [her] private part." *Id.* at 50. C.P. said, "Why would you want to do that? You're my dad." *Id.* Parks responded that "when people send pictures like that then it makes him want . . . to do that to [C.P.]" *Id.* Parks then asked C.P. if she wanted to leave the bedroom, and she said yes. So C.P. left and returned to the other room and went to sleep on the couch.

[5] The next morning, Parks asked C.P. to help him with something on the computer, and she agreed. Parks told C.P. not to tell anyone what had happened in the bedroom that night. C.P. told him that she would not tell anyone about it. But a short time later, C.P. was walking to a nearby store with her sister and brother, and she told them what Parks had said to her the night before. One of them then called a friend of the family, who came and picked them all up. C.P. later told her grandmother about the incident, and her grandmother contacted the police.

[6] The State charged Parks with child solicitation, as a Class D felony. A jury found him guilty as charged. The trial court entered judgment accordingly and sentenced Parks to three years executed. This appeal ensued.

## Discussion and Decision

[7] Parks contends that his sentence is inappropriate in light of the nature of the offense and his character. Article 7, Sections 4 and 6 of the Indiana Constitution "authorize[] independent appellate review and revision of a sentence imposed by the trial court." *Roush v. State*, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). *Id.* Revision of a sentence under Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offenses and his character. *See* Ind. Appellate Rule 7(B); *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. *Gibson v. State*, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." *Roush*, 875 N.E.2d at 812 (alteration original).

[8] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222, 1224

(Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id.* at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id.* at 1224.

[9] Parks first contends that the nature of the offense does "not establish any serious degree of heinous circumstances surrounding the commission of the illegal act" to support the three-year sentence. Appellant's Br. at 5. In essence, Parks maintains that nothing about the nature of the offense supports more than the advisory sentence. We cannot agree. Parks asked his twelve-year-old daughter, with whom he was in a position of trust, to have sexual intercourse with him and, when she declined, to allow him to perform oral sex on her. Those facts, without more, are especially heinous. We hold that Parks' sentence is not inappropriate in light of the nature of the offense.

[10] Next, Parks contends that his sentence is inappropriate in light of his character. Parks acknowledges that, given his extensive criminal history, "the facts may be a bit more problematic" for him on this prong. *Id.* Parks maintains that his "four prior felony convictions . . . date back at least six years to twelve years previous to the instant offense" and "are completely dissimilar to the instant offense." *Id.* at 6. Accordingly, Parks asserts that his criminal history does not justify the three-year sentence. Again, we cannot agree.

As the State points out, Parks' criminal history includes two misdemeanor convictions, three probation violations, and the following felony convictions: Class B felony "Delivery or Finance of Cocaine" in 2002; Class D felony possession of cocaine in 2006; Class B felony dealing in cocaine in 2008; and Class C felony leaving the scene of an accident causing death in 2012. Appellant's App. at 87. The length and substance of Parks' criminal history reflect a poor character. We also note that Parks was on home detention at the time of the instant offense. And, again, Parks was in a position of trust over his daughter C.P. We cannot say that Parks' sentence is inappropriate in light of his character.

Affirmed.

Vaidik, C.J., and Baker, J., concur.