## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 11 2017, 7:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Scott L. Barnhart
Brooke Smith
Keffer Barnhart LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kevin Nobel Eastwood,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

May 11, 2017

Court of Appeals Case No.
82A01-1611-CR-2506

Appeal from the Vanderburgh
Superior Court

The Honorable Robert J. Tornatta,
Judge

Trial Court Cause No.
82D03-1507-F1-3926

**Najam, Judge.**

# Statement of the Case

[1] Kevin Nobel Eastwood appeals his convictions for attempted murder, a Level 1 felony, and battery, as a Level 5 felony, following a jury trial. Eastwood presents the following issues for our review:

>    1.   Whether the trial court abused its discretion when it denied his request for an admonishment during voir dire.
>
>    2.   Whether his sentence is inappropriate in light of the nature of the offenses and his character.

[2] We affirm.

# Facts and Procedural History

[3] On July 1, 2015, Rodney Kessler and Anastacia Eastwood attended a court hearing to address issues of Kessler's visitation and parenting time with their child, C.W. Later that night, Kessler and his wife, Crystal, were inside their mobile home when Crystal heard someone open a gate in their front yard. Kessler was about to open the front door when Eastwood, Anastacia's husband, kicked it open and entered the home. Eastwood was wielding a knife, and he said, "[N]ow you meet me, mother****er, you're going to die and you'll never see [C.W.]" Tr. Vol. I at 182. Kessler tried to close the door, but Eastwood forced his way through the door and began stabbing Kessler multiple times. Kessler's wife, Crystal, intervened and struck Eastwood with a plunger handle, but Eastwood chased her outside, where she fell to the ground. Eastwood cut her wrist and hand as she held her hands up in a defensive posture. Eastwood

then fled the scene, but, as he ran away, he told Crystal that "if he didn't get [them] now he was going to come back and kill them both because [they] weren't ever allowed to see [C.W.] again." *Id.* at 205. Kessler's wounds were severe, and he and Crystal applied tourniquets in an effort to stanch the bleeding while they waited for emergency medical technicians to arrive.

[4] Eastwood then drove himself to the home of Anastacia's grandparents, Randall and Patricia Williams, in Kentucky. When he arrived there at approximately 2:00 a.m., he was crying and told Patricia "that he messed up." *Id.* at 233. Eastwood told Patricia that he and Kessler "got into a fight." *Id.* at 234. Patricia drove Eastwood back to Evansville and, when they arrived at the police station, Eastwood told Patricia that he had stabbed Kessler. Eastwood then turned himself into the police.

[5] The State charged Eastwood with attempted murder, burglary, and battery. At his trial, during voir dire, the prosecutor asked a prospective juror who had been the victim of a burglary this question: "If you were called to give an initial statement or even maybe testify in trial would you [have] gone and testif[ied] about what you saw and what you observed?" *Id.* at 41. When the prospective juror responded yes, the prosecutor asked him why, and the prospective juror said, "To see if the right person who did it was prosecuted." *Id.* The prosecutor then said, "Right because we don't (inaudible) that's not what we do." *Id.* Defense counsel then asked to approach the bench.

[6]     During the ensuing side bar conference, defense counsel said, "That last comment was probably a little bit over the line on, he said we don't want to get the wrong guy, he is kind of intervening [sic] that he has some superior knowledge here and he can't prosecute that portion. I think that is what he said." *Id.* at 42. The prosecutor responded, "I mean I'm the first one to say it, we should prove our case beyond a reasonable doubt, and we should bring the right person. I'm not insinuating anything." *Id.* Defense counsel moved for a mistrial and said, "I just think that his comment crossed the line as to personal vouching as to the strength of his personal belief and the State's case which is not (inaudible)." *Id.* The trial court then said, "I think you are taking it differently than I took it" and "He is saying they are not out to get the wrong guy." *Id.* at 43. The court denied the motion for mistrial and, when defense counsel asked for an admonishment, the court said, "I'm hesitant to even go back and make a big deal out [of] what he said because I think we might take something that is really innocuous and make it an issue." *Id.* Accordingly, the trial court did not admonish the prospective jurors.

[7]     The jury found Eastwood guilty of attempted murder and battery, but acquitted him of burglary. The trial court entered judgment and sentenced Eastwood to the advisory sentence of thirty years for attempted murder and the advisory sentence of three years for battery, and the court ordered those sentences to run concurrently. This appeal ensued.

# Discussion and Decision

## *Issue One: Voir Dire*

[8] Eastwood first contends that the trial court abused its discretion when it denied his request for an admonishment during voir dire. Trial court decisions regarding admonishments to the jury are reviewed only for an abuse of discretion. *Gibson v. State*, 702 N.E.2d 707, 710 (Ind. 1998). An abuse of discretion exists where the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

[9] Eastwood maintains that the prosecutor's comment during voir dire "was vouching for the credibility of his case by responding to the prospective juror's answer and suggesting that he would not prosecute the wrong person "because . . . that's not what we do." Appellant's Br. at 9. But we agree with the State that, both because the prosecutor's statement was only partially transcribed and because the trial court reasonably interpreted the statement to mean that "they are not out to get the wrong guy," Eastwood cannot show an abuse of discretion on this issue. Tr. Vol. I at 43. In any event, in light of the abundant evidence of Eastwood's guilt, including Eastwood's own statements to the Williamses in the aftermath of the offenses, if there were any error in the trial court's failure to admonish the prospective jurors it would be harmless. Ind. Appellate Rule 66(A).

### *Issue Two: Sentence*

[10]    Eastwood next contends that his sentence is inappropriate in light of the nature of the offenses and his character. As we have explained:

> Indiana Appellate Rule 7(B) permits an Indiana appellate court to "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." We assess the trial court's recognition or nonrecognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. *Gibson v. State*, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). The principal role of appellate review is to "leaven the outliers." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). A defendant must persuade the appellate court that his or her sentence has met the inappropriateness standard of review. *Roush v. State*, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007).

*Robinson v. State*, 61 N.E.3d 1226, 1228 (Ind. Ct. App. 2016).

[11]    Eastwood asserts that the concurrent advisory sentences are inappropriate in light of the nature of the offenses because they "stemmed from prior stress and frustration concerning C.W. and parenting time" and he immediately admitted his guilt and apologized. Appellant's Br. at 10. And Eastwood maintains that his sentence is inappropriate in light of his character because he is employed, attends community college, and has an "active and positive influence on his young children." *Id.* at 11. We cannot agree.

[12]    Regarding the nature of the offenses, reacting to Kessler's desire to spend more time with C.W., Eastwood repeatedly threatened to kill Kessler while he

stabbed him multiple times, and he threatened to kill Crystal after she intervened to save Kessler from further injury. Eastwood left Kessler lying in a pool of blood, reiterated his threat to kill Kessler as he fled, and drove to Kentucky. Eastwood had "punctured the sac around [Kessler's] spinal cord and it got infected," so Kessler required surgery one month later. Tr. Vol. 1 at 185. Regarding his character, while we commend Eastwood for his work ethic, pursuit of higher education, and dedication to family, his criminal history consists of three prior felonies, including battery against a law enforcement officer, and two misdemeanors. And we note that, because there were two victims here, the trial court had discretion to impose consecutive sentences. We cannot say that the concurrent advisory sentences are inappropriate in light of the nature of Eastwood's offenses and his character and, thus, we affirm his sentence.

[13] Affirmed.

Riley, J., and Bradford, J., concur.