## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 10 2018, 6:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marielena Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles A. Pickering, *Appellant-Defendant,* | August 10, 2018 |
| v. | Court of Appeals Case No. 71A03-1711-CR-2785 |
| | Appeal from the St. Joseph Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Elizabeth C. Hurley, Judge |
| | Trial Court Cause No. 71D08-1704-F3-24 |

**Najam, Judge.**

# Statement of the Case

Charles Pickering appeals his sentence following his convictions for rape, as a Level 3 felony, and battery, as a Level 6 felony. He presents a single issue for our review, namely, whether his maximum sentence is inappropriate in light of the nature of the offenses and his character. We affirm.

# Facts and Procedural History

On January 11, 2017, Pickering met S.B., a sixty-three-year-old homeless woman, at a shelter in South Bend, and he invited her to come with him to an apartment where he was staying. Pickering and S.B. drank some beer and vodka, and then Pickering started to undress. S.B. told Pickering that she did not want to have sex with him, but he grabbed her hair and forced her to perform fellatio on him. Pickering hit S.B. hard in the face multiple times. S.B. tried to push him away, and he eventually backed off. Approximately fifteen minutes later, Pickering called S.B. a "b****" and forcibly removed her clothes. Tr. Vol. II at 112. S.B. repeatedly told him "No," but he attempted to have anal sex with her. *Id.* When that was unsuccessful, Pickering forcibly penetrated S.B.'s vagina with his penis. All the while, Pickering was pulling S.B.'s hair and hitting her, and S.B. was telling him to stop.

At some point, S.B. was able to dial 9-1-1 on her cell phone, but Pickering grabbed her phone and threw it out of a window. S.B. finally made her way out of the apartment, and she found a South Bend Police Officer. After she informed the police officer of what had occurred, she was taken to a hospital

where she was examined and treated for her several injuries. Officers then obtained a warrant, found Pickering in the apartment, and arrested him.

[4] The State charged Pickering with three counts of rape, as Level 3 felonies, and one count of battery, as a Level 6 felony. A jury found Pickering guilty of one count of rape and battery but acquitted him on the other two counts of rape. Following a sentencing hearing, the trial court sentenced Pickering to consecutive executed sentences of sixteen years for the Level 3 felony and two and one-half years for the Level 6 felony, for an aggregate sentence of eighteen and one-half years. This appeal ensued.

## Discussion and Decision

[5] Pickering asserts that his sentence is inappropriate in light of the nature of the offenses and his character. As we have explained:

> Indiana Appellate Rule 7(B) permits an Indiana appellate court to "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." We assess the trial court's recognition or nonrecognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. *Gibson v. State*, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). The principal role of appellate review is to "leaven the outliers." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). A defendant must persuade the appellate court that his or her sentence has met the inappropriateness standard of review. *Roush v. State*, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007).

*Robinson v. State*, 61 N.E.3d 1226, 1228 (Ind. Ct. App. 2016).

Here, the trial court imposed the maximum possible, fully executed sentence on each conviction and ordered that the sentences run consecutively. Pickering contends that the nature of the offenses does not support "the absolute maximum allowed by law," and he asks that we revise his aggregate sentence down to twelve years. Appellant's Br. at 10. And he asserts that his sentence is inappropriate in light of his character because his criminal history does not support the sentence imposed and because he has mental health and substance abuse issues. Pickering maintains that he is not "the worst of the worst" and does not, therefore, deserve the maximum sentence. *Id.* at 9.

We first address Pickering's contention that he is not "the worst of the worst." *Id.* As we have observed,

> [a]lthough the maximum possible sentences are generally most appropriate for the worst offenders, this rule is not an invitation to determine whether a worse offender could be imagined, as it is always possible to identify or hypothesize a significantly more despicable scenario, regardless of the nature of any particular offense and offender.

*Kovats v. State*, 982 N.E.2d 409, 416 (Ind. Ct. App. 2013). By stating that maximum sentences are ordinarily appropriate for the "worst offenders," we refer generally to the class of offenses and offenders that warrant the maximum punishment, which encompasses a considerable variety of offenses and offenders. *Id.* Accordingly, "[w]e concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being

sentenced, and what it reveals about the defendant's character." *Wells v. State*, 904 N.E.2d 265, 274 (Ind. Ct. App. 2009), *trans. denied*.

[8]     Here, regarding the nature of the offenses, Pickering acknowledges that rape "is a serious offense which by its very nature carries with it emotional and physical trauma to the victim." *Id.* Further, S.B. testified that she feared for her life during the attack. We cannot say that the nature of the offenses does not support the maximum sentence.

[9]     Regarding his character, Pickering's criminal history includes twenty-two prior convictions, including three felony burglary convictions, and probation violations. Pickering suggests that, because his previous crimes "are mostly misdemeanor convictions" and are "dissimilar" and not "close in proximity" to the instant offenses, "the weight to which [his] criminal history should be given is much less than what the trial court focused upon." *Id.* at 8. But the sheer number of convictions, coupled with probation violations, shows Pickering's consistent inability to lead a law-abiding life. Regarding his alleged mental illness, beyond a statement in his presentence investigation report that he has suffered from manic depression for many years, Pickering does not direct us to any evidence to support his claim that he is mentally ill. And Pickering does not explain how his history of substance abuse and consumption of alcohol on the day of the offenses reflects positively on his character. We cannot say that Pickering's aggregate eighteen and one-half years executed sentence is inappropriate in light of the nature of the offenses and his character, and we affirm his sentence.

[10]    Affirmed.

Crone, J., and Pyle, J., concur.